STATE of Wisconsin, Plaintiff-Respondent,

v.

Patrick R. PATTERSON,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2008AP1968–CR. Oral argument September 14, 2010.
—Decided November 17, 2010.*

2010 WI 130

(Also reported in 790 N.W.2d 909.)

600

602

¶ 1. N. PATRICK CROOKS, J. This is a review of a published decision of the court of appeals[1] in a case arising from the death of seventeen-year-old Tanya S. (Tanya) from a drug overdose. Patrick R. Patterson (Patterson) challenges his convictions in connection with her death for first-degree reckless homicide by delivery of a controlled substance contrary to Wis. Stat. § 940.02(2)(a)' (2007–08)[2] and contributing to the delinquency of a child with death as a consequence contrary

---

[1] *State v. Patterson,* 2009 WI App 161, 321 Wis. 2d 752, 776 N.W.2d 602.

[2] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

to Wis. Stat. § 948.40(1), (4)(a).[3] After a jury convicted him of both offenses, Patterson moved the Juneau County Circuit Court, the Honorable Charles A. Pollex presiding, for postconviction relief, which the circuit court denied as to these offenses. The court of appeals affirmed the jury verdict and the circuit court's denial of postconviction relief.

¶ 2. We address four issues in our review:

– First, whether the punishments for first-degree reckless homicide by delivery of a controlled substance and contributing to the delinquency of a child with death as a consequence are multiplicitous when both convictions arise from the same death.

– Second, whether a defendant may be convicted of contributing to the delinquency of a seventeen-year-old when the relevant statute's definition of "child" provides an exception for purposes of prosecuting a person who is over seventeen.[4]

– Third, whether a jury instruction for first-degree reckless homicide by delivery of a controlled substance was erroneous because the way the instruction was worded allegedly allowed the jury to find guilt based on a mere allegation rather than proof beyond a reasonable doubt.

---

[3] Patterson was also charged with four counts of delivery of a controlled substance, Oxycodone, to Tanya and three others. These charges are not at issue in this appeal.

[4] *See* Wis. Stat. §§ 948.01(1), 948.40(1). Section 948.01(1) provides: " 'Child' means a person who has not attained the age of 18 years, except that for purposes of prosecuting a person who is alleged to have violated a state or federal criminal law, 'child' does not include a person who has attained the age of 17 years." Section 948.40(1) provides: "No person may intentionally encourage or contribute to the delinquency of a child."

– Fourth, whether Patterson is entitled to a new trial because of claimed prosecutorial misconduct stemming from the prosecutor's use of other witnesses' statements and testimony in a manner prohibited by *Haseltine*.[5]

¶ 3. We affirm the court of appeals for the reasons stated below. In response to Patterson's first claim, we hold that convictions for both first-degree reckless homicide by delivery of a controlled substance and contributing to the delinquency of a child with death as a consequence are not multiplicitous because, in light of the four-part analysis outlined in *State v. Davison,* 2003 WI 89, ¶ 50, 263 Wis. 2d 145, 666 N.W.2d 1, we conclude that the legislature intended to permit multiple punishments for these offenses. On this issue, we affirm the court of appeals, but on different grounds.[6] We conclude that the convictions are not multiplicitous because contributing to the delinquency of a child with death as a consequence is not a "type of criminal homicide" for purposes of Wis. Stat. § 939.66(2), and further conclude that the legislature intended to permit cumulative punishments for that offense and first-degree reckless homicide by delivery of a controlled substance.

---

[5] In *Haseltine,* the court of appeals held that "[n]o witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically competent witness is telling the truth." *State v. Haseltine,* 120 Wis. 2d 92, 96, 352 N.W.2d 673 (Ct. App. 1984).

[6] The court of appeals held that the charges are not multiplicitous, but its holding was based on an improper reading of *Davison. Patterson,* 321 Wis. 2d 752, ¶ 12 (citing *Davison,* 263 Wis. 2d 145, ¶¶ 65–67). In its decision, the court of appeals reasoned that, based on *Davison,* Wis. Stat. § 939.66 does not prohibit conviction of both the charged crime and a lesser-included offense when both offenses are charged. *Patterson,* 321 Wis. 2d 752, ¶ 12. We disagree for the reasons set forth below.

¶ 4. Regarding the second issue, we hold that Wis. Stat. § 948.40(1) proscribes contributing to the delinquency of any child under the age of eighteen, and thus Patterson's conviction was proper. Our interpretation of Wis. Stat. § 948.40(1) is informed by the plain language and legislative history of the definition of "child" in Wis. Stat. § 948.01(1), which excludes those over seventeen only for the "purposes of prosecuting" such person.

¶ 5. Third, we conclude that the jury instruction for first-degree reckless homicide by delivery of a controlled substance was not erroneous because the jury was properly advised that the burden of proving all elements of the crime beyond a reasonable doubt rested on the State. Patterson's claim that the wording of the fourth element of that crime allowed the jury to convict him based on allegations alone is not reasonable, especially when one looks at the jury instructions as a whole.

¶ 6. Fourth, there was no prosecutorial misconduct warranting a new trial because the single *Haseltine* violation in the seven-day trial in this case did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Neuser,* 191 Wis. 2d 131, 136, 528 N.W.2d 49 (Ct. App. 1995). We therefore affirm the decision of the court of appeals.

## I. BACKGROUND

¶ 7. For the purposes of this appeal, the facts of this case are undisputed. At the heart of this case is the death of Tanya, at the age of seventeen, from an overdose of Oxycodone, a prescription pain medication. Tanya spent the night of May 2, 2003, with her boyfriend, Patterson. Over the course of that evening, Patterson and Tanya both used Oxycodone. Several people who visited Patterson at his home that night

testified that Patterson gave Tanya Oxycodone pills, which she ingested. The next morning, Patterson and his mother, with whom Patterson lived, awoke to find Tanya unconscious. Emergency medical personnel were unable to revive Tanya, and she was taken to the hospital, where she was pronounced dead. After an autopsy and a toxicological analysis, the coroner determined that the cause of death was drug ingestion, specifically, Oxycodone.

¶ 8. On February 13, 2004, Patterson was charged with two counts of delivery of a schedule II controlled substance, namely Oxycodone, in violation of Wis. Stat. § 961.41(1)(a), first-degree reckless homicide by delivery of a controlled substance in violation of Wis. Stat. § 940.02(2)(a), and encouraging or contributing to the delinquency of a child resulting in death in violation of Wis. Stat. § 948.40(1), (4)(a). In an amended criminal complaint, Patterson was also charged with two additional counts of delivery of a controlled substance in violation of Wis. Stat. § 961.41(1)(a), for delivering Oxycodone to two others on the night of May 2, 2003.

¶ 9. After a seven-day jury trial in Juneau County Circuit Court, the Honorable Charles A. Pollex presiding, the jury acquitted Patterson of one count of delivery of a controlled substance and found Patterson guilty of all other charges. Patterson moved the circuit court for postconviction relief. First, Patterson argued that count four, contributing to the delinquency of a minor resulting in death, should be dismissed due to insufficient evidence. Specifically, Patterson alleged that the State failed to prove the first element of Wis. Stat. § 948.40 because Tanya was seventeen at the time and thus not a "child" as that term is used in the statute.[7] Second, Patterson

---

[7] In that claim, Patterson also argued (1) ineffective assistance of trial counsel for failing to raise the issue during trial,

sought dismissal of the contributing to the delinquency of a minor and delivery of a controlled substance counts as multiplicitous, arguing that both are lesser included offenses of first-degree reckless homicide by delivery of a controlled substance. Third, Patterson argued that count three, first-degree reckless homicide by delivery of a controlled substance, must be dismissed because a jury instruction was erroneous. The circuit court granted Patterson's motion to dismiss count two for delivery of Oxycodone to Tanya because it is a lesser included offense of count three, reckless homicide by delivery of Oxycodone, and denied all of Patterson's other claims for relief.

¶ 10. Patterson appealed, and the court of appeals affirmed the circuit court's judgment of conviction and order denying Patterson's motions for postconviction relief. *Patterson,* 321 Wis. 2d 752, ¶ 1. Regarding Patterson's multiplicity claim, the court of appeals held that the punishments for both first-degree reckless homicide by delivery of a controlled substance and contributing to the delinquency of a child with death as a consequence are not multiplicitous because an analysis of the relevant factors reveals a legislative intent to permit convictions for both offenses. *Id.* In part the court of appeals relied on *Davison,* 263 Wis. 2d 145, and interpreted that case to provide that Wis. Stat. § 939.66 does not show a clear legislative intent to bar multiple convictions for lesser included offenses when both offenses are charged. *Patterson,* 321 Wis. 2d 752, ¶¶ 10–12. In addressing Patterson's claim that Wis. Stat. § 948.40(1) does not apply to children over seven-

and (2) that his conviction was based on insufficient evidence because, even viewing the evidence in the light most favorable to the State, Tanya never "possessed" Oxycodone. Patterson does not raise these issues on appeal.

teen, the court of appeals examined the relevant statutory definitions and concluded that seventeen-year-olds are excepted from the definition of "juvenile" only for the "purpose[] of investigating or prosecuting" such person. *Patterson,* 321 Wis. 2d 752, ¶ 29. In response to Patterson's jury instruction claim, the court of appeals held that, viewing the instructions as a whole, the use of the word "alleged" in the fourth element of the charge of first-degree reckless homicide by delivery of a controlled substance only refers back to the first element and thus does not improperly relieve the State of its burden of proof. *Id.,* ¶ 32. On Patterson's prosecutorial misconduct claim, the court of appeals held that the circuit court did not erroneously exercise its discretion in denying Patterson's motion for a mistrial because the prosecutor's single improper question did not result in an unfair trial.[8] *Id.,* ¶ 37.

## II. ANALYSIS

¶ 11. Patterson challenges several aspects of his trial and conviction. We agree with the court of appeals' decision to affirm the circuit court's judgment of conviction and denial of postconviction relief, though in part on different grounds. We will address each of Patterson's claims in the order decided by the court of appeals and as outlined above.

---

[8] The court of appeals also addressed the claim raised in Patterson's postconviction motion that the State failed to prove that Tanya "possessed" Oxycodone and held that there was sufficient evidence. *Patterson,* 321 Wis. 2d 752, ¶ 26. Patterson did not raise that issue in his petition for review to this court.

## A. Patterson's Multiplicity Claim

■■

¶ 12. A multiplicity claim presents a question of law that is "subject to independent appellate review." *State v. Multaler,* 2002 WI 35, ¶ 52, 252 Wis. 2d 54, 643 N.W.2d 437. Multiplicity claims are analyzed under a two-part test. First, pursuant to the *Blockburger* elements-only test, this court examines whether the offenses are identical in law and fact. *Id.* Second, this court turns to whether the legislature intended multiple punishments for the conduct and offenses at issue. *Id.*

¶ 13. Patterson argues that the legislature did not intend to permit multiple convictions for reckless homicide by delivery of a controlled substance and contributing to the delinquency of a child with death as a consequence for the same act. *See* Wis. Stat. §§ 940.02(2)(a), 948.40(1), (4)(a).[9] While Patterson concedes that the statutes are not identical in law or fact, he argues that the legislature intended to prohibit multiple convictions, and thus multiple convictions violate due process. In support he contends that the plain language and legislative history of Wis. Stat. § 939.66(2) shows a clear legislative intent to prohibit

---

[9] Contributing to the delinquency of a child. (1) No person may intentionally encourage or contribute to the delinquency of a child. This subsection includes intentionally encouraging or contributing to an act by a child under the age of 10 which would be a delinquent act if committed by a child 10 years of age or older. . . .

(4) A person who violates this section is guilty of a Class A misdemeanor, except: (a) If death is a consequence, the person is guilty of a Class D felony . . . .

Wis. Stat. § 948.40(1), (4)(a).

conviction of a homicide offense and a lesser included type of homicide. Further, Patterson asserts that § 948.40(1), (4)(a) is a less serious type of homicide than § 940.02(2)(a) because they require proof that the defendant caused a death and impose a lesser penalty than first-degree reckless homicide. Patterson contends that homicide statutes are located throughout the statutes and that Wis. Stat. § 948.40(1), (4)(a) is one such example. In response to the court of appeals' holding, Patterson argues that *Davison* does not control because this court limited its interpretation of Wis. Stat. § 939.66 to subsection (2m) which applies to battery offenses.

¶ 14. The State's argument is twofold. First, the State argues that, based on this court's interpretation of Wis. Stat. § 939.66 in *Davison,* the lesser included offenses provision does not prohibit multiple convictions when both offenses are charged. Additionally, the State argues that in any event Wis. Stat. § 939.66(2) does not prohibit the convictions here because Wis. Stat. § 948.40(1), (4)(a) is not a "type of criminal homicide."

¶ 15. Before delving into the substance of Patterson's multiplicity claim, we will address the appropriate framework for analyzing such claims. Under the Wisconsin Constitution, multiple punishments may not be imposed for charges that are identical in law and fact unless the legislature intended to impose such punishments. *Davison,* 263 Wis. 2d 145, ¶¶ 30–32; *State v. Lechner,* 217 Wis. 2d 392, 401–02, 576 N.W.2d 912 (1998). Therefore, the "elements-only" test, to determine whether charges are identical in law and fact, is the first prong of a multiplicity analysis. *Multaler,* 252 Wis. 2d 54, ¶ 52. The elements-only test determines the presumption under which the analysis of the

second prong is to be conducted. *Davison,* 263 Wis. 2d 145, ¶¶ 43–45. Offenses with elements identical in law and fact establish a presumption that the legislature *did not* intend to permit multiple punishments. *Id.,* ¶ 43. Offenses with elements that differ in law or fact establish a presumption that the legislature *did* intend to permit multiple punishments. *Id.,* ¶ 44.

¶ 16. Regardless of the outcome of the elements-only test, the court proceeds to the second prong to discern legislative intent. *Id.,* ¶¶ 43–45. Operating under the presumption established under the first prong, the court then proceeds in a four-factor analysis to determine whether the legislature intended to permit multiple punishments for the offenses in question. *Id.,* ¶ 50. This court examines (1) all relevant statutory language, (2) the legislative history and context of the statutes, (3) the nature of the proscribed conduct, and (4) the appropriateness of multiple punishments for the defendant's conduct. *Id.* Even if the plain language of the relevant statutes is unambiguous, in addressing a multiplicity claim we proceed through all four factors. *State v. Grayson,* 172 Wis. 2d 156, 161, 493 N.W.2d 23 (1992).

¶ 17. We now turn to the statutes at issue in this case. First, under the elements-only test, first-degree reckless homicide by delivery of a controlled substance and contributing to the delinquency of a child with death as a consequence are not identical in law and fact.[10] Both parties acknowledge that the offenses are

[10] The elements of first-degree reckless homicide by delivery of a controlled substance are that the defendant delivered a controlled substance to the victim; that the victim used the

not identical in law or fact. To provide just one difference, contributing to the delinquency of a child with death as a consequence requires that a child be involved, whereas reckless homicide by delivery of a controlled substance applies to both children and adults. *Compare* Wis. Stat. § 940.02(2)(a), *with* Wis. Stat. § 948.40(1), (4)(a). Thus, we proceed presuming that the legislature intended to permit punishment under Wis. Stat. §§ 940.02(2)(a), 948.40(1), (4)(a) for the same conduct. *Davison,* 263 Wis. 2d 145, ¶ 44. The offenses are multiplicitous only if this presumption is rebutted by clear evidence of contrary legislative intent. *Id.*

### 1. Relevant Statutory Language

■

¶ 18. The plain language of the three relevant statutes does not rebut the presumption that the legislature intended to permit punishment under Wis. Stat. §§ 940.02(2)(a), and 948.40(1), (4)(a). In addition to the two statutes under which Patterson was convicted, Wis. Stat. § 939.66(2) is relevant to this analysis because it prohibits conviction of both a homicide offense and a lesser included type of criminal homicide. Patterson's multiplicity claim is based in part on his argument that

---

substance that the defendant delivered; and that the defendant knew or believed that the substance was the controlled substance that was delivered. Wis. Stat. § 940.02(2)(a); *see* Wis JI—Criminal 1021.

The elements of contributing to the delinquency of a child where death is a consequence are that the child was under the age of 18 years; that the defendant intentionally encouraged or contributed to the delinquency of that child; and that death was a consequence of encouraging or contributing to the delinquency of that child. Wis. Stat. § 948.40(1), (4)(a); *see* Wis JI—Criminal 2170A.

Wis. Stat. § 948.40(1), (4)(a) is a type of criminal homicide. Under this factor we conclude that Wis. Stat. § 948.40(1), (4)(a) is not a type of criminal homicide because it lacks the characteristics of a traditional homicide statute.

¶ 19. As we have noted, Wis. Stat. § 939.66 permits conviction of either the charged offense or a lesser-included offense, but precludes conviction of both. Contrary to the State's assertion and the court of appeals' reasoning, this statute prohibits convictions under multiple statutes where one is an included offense of the other, whether or not one or both are charged. Wis. Stat. § 939.66. The court of appeals based its holding in part on this charging distinction. *Patterson,* 321 Wis. 2d 752, ¶ 12. Relying on this court's decision in *Davison,* the court of appeals held that Wis. Stat. § 939.66(2) does not show a clear legislative intent to prohibit "punishment for *both* a charged criminal homicide and a charged less serious type of criminal homicide." *Id.* (emphasis added). Based on this language the State argues that this court should affirm the court of appeals on the ground that Wis. Stat. § 939.66 does not prohibit conviction of multiple types of homicide when both offenses are charged. We reject this reading of *Davison* and decline to affirm the court of appeals on this basis.

¶ 20. We disagree with the court of appeals for two reasons. First, the court of appeals' reliance on *Davison* is inappropriate because *Davison* involved the battery statutes. Our interpretation of Wis. Stat. § 939.66 in *Davison* turned on an analysis of subsection (2m), which prohibits conviction of both a battery offense and "a less serious or equally serious type of battery." 263 Wis. 2d 145, ¶ 109. Second, the court of appeals misinterpreted our holding in *Davison.* While we noted that a literal reading of Wis. Stat. § 939.66 could suggest that it

617

permits multiple convictions for two types of battery where both are charged, we rejected this reading, calling it a "curious result[]," in favor of a more reasonable interpretation of the statute based on the legislative history of subsection (2m). *Davison,* 263 Wis. 2d 145, ¶¶ 74–75, 109 ("The disturbing inconsistency within § 939.66 if Davison's literal interpretation of subsection (2m) were adopted, the compelling legislative history of subsection (2m), the legislative motive for the proscribed conduct under the ordinary and special circumstances battery statutes, and the appropriateness of punishing more than one offense lead us to conclude that the legislature has not clearly intended to prohibit multiple punishments on these facts."). As we did in *Davison,* we decline to hold that Wis. Stat. § 939.66 permits conviction for an offense and an included offense where both are charged, and instead affirm the court of appeals on the basis that Wis. Stat. § 948.40(1), (4)(a) is not a type of criminal homicide.

¶ 21. In subsection (2) of Wis. Stat. § 939.66, the provision explains that an included crime may be "[a] crime which is a less serious type of criminal homicide than the one charged." Wis. Stat. § 939.66(2). While Wis. Stat. § 939.66(2) prohibits conviction of a homicide offense and a lesser included type of homicide, *see Lechner,* 217 Wis. 2d at 408, to resolve whether § 939.66(2) informs the present legislative intent analysis, we must determine whether Patterson was convicted of multiple "type[s] of criminal homicide."

¶ 22. The statute is silent regarding what offenses are categorized as "a type of criminal homicide." Wis. Stat. § 939.66(2). In fact "homicide" is not defined anywhere in the statutes. Thus, Wis. Stat. § 939.66(2) is ambiguous regarding what offenses are included as a "type of criminal homicide."

618

¶ 23. However, the fact that § 948.40(1), (4)(a) is so different than the homicide statutes, in its elements and location in the statutes, is instructive. The homicide statutes are collected in chapter 940 entitled "Crimes Against Life and Bodily Security." The offense for contributing to the delinquency of a child with death as a consequence is located in chapter 948, which contains the "Crimes Against Children."

¶ 24. Rather than being a homicide statute, Wis. Stat. § 948.40(1), (4)(a) is more akin to other offenses spread throughout the statutes that proscribe certain conduct and impose a more serious punishment where death results. Patterson argues that these other statutes, citing Wis. Stat. § 346.74(5)(d) as an example, are simply homicide statutes located outside of chapter 940. Wisconsin Stat. § 346.74(5)(d), which provides the penalty when a driver fails to comply with the requirements in Wis. Stat. § 346.67(1) after an accident that results in a death, is similar to § 948.40(1), (4)(a). Both provide a more serious punishment where "death is a consequence." Wis. Stat. §§ 346.74(5)(d), 948.40(1), (4)(a). In contrast, the homicide statutes target those who "cause[] the death" of another. *See, e.g.,* Wis. Stat. §§ 940.01–.03. Further, the fact that § 346.74(5)(d) is not a type of criminal homicide is evident from the fact that defendants are often convicted under both that statute and a homicide statute when their conduct is proscribed by both.[11] Like

[11] *See State v. Harmon,* 2006 WI App 214, 296 Wis. 2d 861, 723 N.W.2d 732 (defendant convicted of § 940.10 – homicide by negligent operation of a vehicle – and § 348.74 – hit-and-run resulting in death); *State v. Lohmeier,* 205 Wis. 2d 183, 556 N.W.2d 90 (1996) (defendant convicted of both §§ 940.09 and 346.74(5)); *State v. Carter,* 229 Wis. 2d 200, 598 N.W.2d 619 (Ct. App. 1999) (defendant charged with both §§ 940.02(1) and 346.74(5)(d)); *State v. Urbanec,* No. 1998AP402–CR, unpub-

Wis. Stat. § 346.74(5)(d), § 948.40(1), (4)(a) is not a type of criminal homicide.[12]

¶ 25. The language of the relevant statutes suggests that the legislature did not intend contributing to the delinquency of a child with death as a consequence to be a type of criminal homicide. The legislative history of these statutes further supports this conclusion.

## 2. Legislative History

¶ 26. Continuing with our multiplicity analysis, we examine the legislative history of the relevant statutes, specifically Wis. Stat. §§ 939.66, 948.40(1), (4)(a). Based on this history, we conclude that the legislature did not intend for Wis. Stat. § 939.66(2)'s prohibition against conviction of multiple types of criminal homicide to include contributing to the delinquency of a child with death as a consequence. First, the

lished slip op. (Wis. Ct. App. Jun. 8, 1999) (defendant convicted of both §§ 940.09 and 346.74(5)(d) for same death).

[12] Contributing to the delinquency of a child with death as a consequence is also distinct from the homicide statutes because the child or a third person could be the immediate cause of the death. Because Wis. Stat. § 948.40(1), (4)(a) utilizes broad language penalizing those who contribute to the delinquency of a child if death is a consequence, a defendant could be convicted where the child, as a result of the delinquency to which the defendant contributed, causes a death. In contrast, most homicide statutes require that the defendant actually cause the death of another. Wis. Stat. §§ 940.01–.03, 940.05–.06, 940.08–.10. We recognize that a defendant may also be convicted for felony murder where another person is the immediate cause of the death; however, we noted in *Oimen* that holding the felon responsible for the homicide was acceptable because the legislature limited felony murder to "inherently dangerous felonies." *State v. Oimen,* 184 Wis. 2d 423, 435–42, 516 N.W.2d 399 (1994).

history of the lesser included offenses provision suggests that the legislature intended "type[s] of criminal homicide" to include only the traditional homicide offenses. Second, the history of Wis. Stat. § 948.40(1), (4)(a) shows that it was created to protect children from dangerous conduct that can result in a death, and it was not created as another type of criminal homicide.

¶ 27. The legislative history of Wis. Stat. § 939.66 is largely silent on what offenses were meant to be included as a "type of criminal homicide," but its origin and development suggest that it is limited to the traditional homicide statutes now located in chapter 940. Before the legislature added specific examples of offenses that were considered included crimes, the general lesser included offenses provision was located in Wis. Stat. § 357.09, entitled "Conviction of included crime."[13] In 1951 the Senate proposed the creation of Wis. Stat. § 339.45,[14] which is substantially similar to the current lesser included offenses provision in Wis. Stat. § 939.66. 1951 S.B. 784. A comment in that bill notes that the new provision was "substantially a restatement of the old section 357.09 with the concept of 'included crime' being spelled out in greater detail." *Id.*

---

[13] This statute provided that "[w]hen a defendant is tried for a crime and is acquitted of part of the crime charged and is convicted of the residue thereof, the verdict may be received and thereupon he shall be adjudged guilty of the crime which appears to the court to be substantially charged by such residue of the indictment or information and shall be sentenced accordingly." Wis. Stat. § 357.09 (1951).

[14] Section 339.45 provided that "[u]pon prosecution for a crime, the actor may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following: . . . (2) A crime which is a less serious type of criminal homicide than the one charged." 1951 S.B. 784.

This change explained that a lesser type of criminal homicide was an included crime, but the legislature did not specify what it meant by a type of criminal homicide.

¶ 28. This bill was never passed by the Assembly, but in 1953 an identical provision was passed by both the Assembly and the Senate as part of a major revision and reorganization of the criminal code. Ch. 623, Laws of 1953; 1953 A.B. 100. A comment explains that "[s]ubsection (2) of the new section is a restatement of old law." 1953 A.B. 100. As further explanation of this new law, the comment provides that "[a]n example of an included crime under subsection (2) is homicide by reckless conduct when the crime charged is first-degree murder." 1953 A.B. 100. In this law, both of the offenses in the example were located in the newly created chapter 340, entitled "Crimes against life and bodily security."[15] Ch. 623, Laws of 1953. While this Act was printed in the 1953 Statutes, it was not to become effective until it was reenacted by the 1955 legislature. *See* § 282, ch. 623, Laws of 1953; William A. Platz, *The Criminal Code,* 1956 Wis. L. Rev. 350, 351–52.

¶ 29. The legislature did not reenact this law but instead replaced it entirely with Chapter 696, Laws of 1955. Platz, *supra,* at 352. In reorganizing the code, the legislature moved the lesser included offenses provision and the homicide statutes to Wis. Stat. § 939.66 and chapter 940 respectively. Ch. 696, Laws of 1955. Other than renumbering the statutes, the legislature did not further modify the lesser included offenses or homicide provisions. No additional comments were provided to elaborate on what offenses were included as types of criminal homicide.

---

[15] The current versions of these offenses are located in chapter 940.

¶ 30. Through this major overhaul of the criminal code, the legislature grouped all of the homicide statutes together in chapter 940, while at the same time developing the language in the lesser included offenses provision referring to types of criminal homicide. By so doing in the same Act, the legislature, it appears, intended to refer to those core criminal homicide statutes in what is now chapter 940. As noted above, the comments in the legislative history further support this conclusion. Further, the legislative history of Wis. Stat. § 948.40(1), (4)(a) leads to the same result.

¶ 31. The legislative history confirms what the language of the statute suggests; Wis. Stat. § 948.40(1), (4)(a) is not a type of criminal homicide, but rather a law for the protection of children from egregious conduct with, obviously, very serious consequences when that conduct results in a death. The fact that this statute provides a more serious punishment for contributing to a child's delinquency when a death occurs does not make it a homicide statute.

¶ 32. In 1961, the language at issue was added to the statute proscribing contributing to the delinquency of a child.[16] Ch. 485, Laws of 1961. Little explanation

---

[16] Prior to the revision, Wis. Stat. § 947.15 provided: "Contributing to the delinquency or neglect of children. (1) The following persons may be fined not more than $500 or imprisoned more than one year in county jail or both: (a) Any person 18 or older who intentionally encourages or contributes to the delinquency or neglect of any child . . . " Wis. Stat. § 947.15(1)(a) (1959). After this change Wis. Stat. § 947.15 provided "Contributing to the delinquency of children; neglect; neglect contributing to death. (1) The following persons may be fined not more than $500 or imprisoned not more than one year in county jail or both, and if death is a consequence may be fined $1,000 or imprisoned not more than 5 years: (a) Any person 18 or older

accompanied this revision. The bill simply stated that it was a law to "amend 947.15(1) relating to increasing the penalty for neglect of children when death results." Drafting File, ch. 485, Laws of 1961, Legislative Reference Bureau, Madison, Wis.

¶ 33. While the intention behind its creation remains somewhat unclear, later revisions provide more insight into the legislature's intent regarding this statute. In 1987, a special committee of the legislative council on crimes against children developed chapter 948 to "[r]eorganize[] those crimes against children currently located in the criminal code [chs. 939 to 948] into a separate chapter of the criminal code, new ch. 948, relating solely to crimes against children." Drafting file for 1987 Wis. Act 332, *Analysis by the Legislative Reference Bureau* of 1987 S.B. 203, Legislative Reference Bureau, Madison, Wis. This move to chapter 948, as opposed to chapter 940 which contains the homicide statutes, indicates that the underlying conduct targeted by this statute is contributing to the delinquency of a child, not homicide. We are further convinced by comments to this Act, which explain:

> In s. 948.40, which applies only to contributing to the delinquency of a child:
>
> 4. Subsection (4) revises the penalties for contributing to the delinquency of a child by:
>
> a. Increasing the penalty where death is a consequence of the act which is encouraged or contributed to from a Class D felony to a Class C felony.

1987 Wis. Act 332.

---

who intentionally encourages or contributes to the delinquency or neglect of any child . . . " Wis. Stat. § 947.15(1)(a) (1961).

¶ 34. These comments clarify that Wis. Stat. § 948.40 proscribes contributing to the delinquency of a child, which offense is considered more serious "where death is a consequence."

¶ 35. Nothing in the legislative history of either Wis. Stat. § 939.66 or § 948.40(1), (4)(a) overcomes the presumption that the legislature intended to permit multiple punishments under these offenses. In fact, quite the opposite. We conclude that the statutory language and legislative history of these provisions indicate that § 948.40(1), (4)(a) is not a type of criminal homicide and thus not covered by § 939.66(2). Nevertheless, continuing with the multiplicity analysis, we turn to the third factor.

### 3. The Nature of the Proscribed Conduct

██

¶ 36. The third factor in the multiplicity analysis requires us to consider the policies underlying each of the statutes and the objectives they seek to achieve. *See Davison,* 263 Wis. 2d 145, ¶¶ 91, 94. The statutes prohibiting the offenses at issue here are aimed at very different targets.

¶ 37. First-degree reckless homicide by delivery of a controlled substance was created as a specific type of criminal homicide to prosecute anyone who provides a fatal dose of a controlled substance. Wis. Stat. § 940.02(2)(a). The legislature developed this law, often referred to as the Len Bias law, in the wake of the tragic death of a University of Maryland basketball star by the same name from a cocaine overdose. *See* Wis JI— Criminal 1021 n.1; Walter Dickey, David Schultz & James L. Fullin, Jr., *The Importance of Clarity in the Law of Homicide: The Wisconsin Revision,* 1989 Wis. L. Rev. 1323, 1351 n.97.

¶ 38. As discussed above in greater detail, § 948.40(1), (4)(a) is meant to protect children from those who would encourage them to become delinquent. *See* 1987 Wis. Act 332. The overarching goal of this statute is to protect children from harm by shielding them from the dangers of breaking the law.

¶ 39. Patterson argues that the nature of the proscribed conduct is the same for both offenses because the physical act, "administering Oxycodone to the victim, causing her to die," is the same for both offenses. However, under this factor we are not concerned with whether the underlying act is the same for both offenses as that inquiry was done in the elements-only test. Rather, this factor focuses on the policies underlying these offenses.

¶ 40. The court of appeals aptly dismissed Patterson's argument under this factor as follows. "That Patterson's particular conduct happens to fall within a relatively limited area covered by both statues does not show that the legislature intended only one punishment." *Patterson,* 321 Wis. 2d 752, ¶ 19.

¶ 41. The State argues that the legislature intended to permit multiple punishments for these offenses because each statute proscribes different conduct. According to the State and as we noted above, Wis. Stat. § 940.02(2)(a) addresses homicide involving the delivery, manufacture or distribution of drugs and, in contrast, Wis. Stat. § 948.40(1), (4)(a) addresses contributing to the delinquency of a child. We agree with the State, and thus turn to the final factor in this analysis.

4. The Appropriateness of Multiple Punishments

¶ 42. Our analysis under this factor is closely related to that under the previous factor, and thus we

need not repeat that discussion here in great detail. *See Davison,* 263 Wis. 2d 145, ¶ 98. We conclude that each statute addresses separate harms for which society has a significant interest in preventing.

¶ 43. The aim of the reckless homicide by delivery of a controlled substance statute is preventing drug-related deaths by prosecuting those who distribute fatal doses of drugs. Wis. Stat. § 940.02(2)(a). The contributing to the delinquency of a child offense is meant to protect children from a number of different harms and provides increased deterrence through a more serious punishment when a death results. Wis. Stat. § 948.40(1), (4)(a). When a defendant's conduct implicates both of these offenses, as Patterson's conduct has, it is an especially grievous offense because he has not only caused a death by providing a controlled substance, but he has involved a child in that offense. In Patterson's case, it was the child's death that resulted. We conclude that multiple punishments are appropriate to deter such behavior.

¶ 44. For the reasons stated above, we hold that Patterson failed to overcome the presumption that the legislature intended to allow multiple punishments for this offense, and therefore, his convictions are not multiplicitous.

### B. Patterson's claim regarding the definition of "child" for the purposes of § 948.40(1)

¶ 45. This issue concerns the proper interpretation of Wis. Stat. § 948.40(1), specifically the definition of "child" for the purposes of that statute.[17] As this is a

---

[17] The court of appeals reviewed this claim as one challenging the sufficiency of the evidence. *Patterson,* 321 Wis. 2d 752, ¶ 27. Before the court of appeals Patterson argued that the

question of statutory interpretation, our review is de novo. *McNeil v. Hansen,* 2007 WI 56, ¶ 6, 300 Wis. 2d 358, 731 N.W.2d 273. Statutory interpretation begins with the language of the statute. *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret a statute "where possible to give reasonable effect to every word, in order to avoid surplusage." *Id.,* ¶ 46. Only if we conclude that the plain language of the statute is ambiguous will we look to the legislative history for clarification. *Id.*

¶ 46. Patterson argues that his conviction under Wis. Stat. § 948.40(1), (4)(a) was error because Tanya was seventeen at the time of her death and the statute does not apply to seventeen-year-olds. He bases this argument on an exception in the definition of "juvenile" for those over seventeen. Wis. Stat. § 938.02(10m). The State argues that this exception applies only for the purposes of prosecuting children and therefore does not apply to prosecutions under Wis. Stat. § 948.40(1). *See* Wis. Stat. §§ 938.02(10m), 948.01(1). We agree with the State. We conclude that this exception applies only to the prosecution of children based on the plain language and legislative history of Wis. Stat. §§ 948.01(1) and 948.40(1).

---

evidence was insufficient to support a guilty verdict for contributing to the delinquency of a child with death as a consequence based on his interpretation of Wis. Stat. § 948.40(1). However, Patterson's argument before this court does not present this issue as one regarding the sufficiency of the evidence, but rather as one of statutory interpretation. Because we conclude that this claim turns on the appropriate interpretation of § 948.40(1), our analysis will address it as such.

¶ 47. We first examine the plain language of Wis. Stat. § 948.40(1). It provides that "[n]o person may intentionally encourage or contribute to the delinquency of a child." Wis. Stat. § 948.40(1). "Child" is defined in chapter 948 as "a person who has not attained the age of 18 years, except that for purposes of prosecuting a person who is alleged to have violated a state or federal criminal law, 'child' does not include a person who has attained the age of 17 years."[18] Wis. Stat. § 948.01(1). Based on the plain language of the definition of "child," it excludes children over the age of seventeen from its definition only "for the purposes of prosecuting" such a person. *Id.* Since under Wis. Stat. § 948.40(1) it is the person contributing to the child's delinquency being prosecuted and not the child, the exception does not apply to the victim here.

¶ 48. Patterson argues that this reading of § 948.40(1) strips the word "delinquency" of any meaning. He asserts that the reference to a child's delinquency implicates the over-seventeen exception as children must be prosecuted to become delinquent. This argument fails for two reasons. First, this court has expressly held that a conviction under § 948.40(1) for contributing to a child's delinquency is not predicated

_____

[18] The relevant exception to the definition of "juvenile" in Wis. Stat. § 938.02(10m) is substantially similar to the exception in the definition of "child" in Wis. Stat. § 948.01(1). Because the language of Wis. Stat. § 948.40(1) refers to "child" rather than "juvenile," and because the relevant legislative history addresses the definition of "child" in chapter 948, we will continue the analysis by referring to the definition of "child" even though the parties and the court of appeals framed their analyses around the definition of "juvenile." As the court of appeals noted, *Patterson,* 321 Wis. 2d 752, ¶ 29 n.12, the analysis would be the same under either term.

on the child actually being adjudicated delinquent. *Riger v. State*, 249 Wis. 201, 204, 23 N.W.2d 456 (1946). Second, the pattern jury instruction explains that for the purposes of Wis. Stat. § 948.40(1), "delinquency" means "any violation of state criminal law by a child." Wis JI—Criminal 2170A. This clarifies that the term "delinquency" in Wis. Stat. § 948.40(1) requires proof only that the child violated a criminal law, and not that the child was prosecuted for that violation.

¶ 49. While the language is reasonably clear, there is claimed ambiguity regarding the interplay between the exception in the definition of "child" for prosecution purposes and the reference in Wis. Stat. § 948.40(1) to delinquency. To resolve that ambiguity, and in support of our interpretation, we will examine the legislative history for further guidance.

¶ 50. The exception in the definition of "child" for the purpose of prosecuting children over seventeen was added in 1995 as part of a revision to juvenile court jurisdiction. Drafting File for 1995 Wis. Act 27, *Analysis by the Legislative Reference Bureau* of 1995 A.B. 150, Legislative Reference Bureau, Madison, Wis. The Legislative Reference Bureau clarified that the purpose of the bill was to "lower[] from 18 to 17 the age at which a person who violates a criminal law is subject to the jurisdiction and procedures of the adult court and, on conviction, to an adult sentence." *Id.* As jurisdiction over the child at issue in § 948.40(1) is not a concern in prosecuting the person that contributed to that child's delinquency, the exception for children over seventeen does not apply. The legislative history supports the plain meaning of the language in Wis. Stat. § 948.40(1).

¶ 51. Therefore, we hold that Patterson's conviction for contributing to the delinquency of Tanya was not error on the basis claimed by Patterson.

## C. Patterson's Jury Instruction Claim

■■

¶ 52. We now turn to Patterson's claims regarding errors during his trial. We first address Patterson's jury instruction claim and then turn to his claim regarding prosecutorial misconduct.

■■ ■■

¶ 53. A jury instruction is erroneous if it fails to clearly place the burden of proving all elements of the offense on the State. *See In re Winship,* 397 U.S. 358, 364 (1970). To ensure compliance with the *Winship* standard, we must "examine the jury instruction as a whole [] to determine whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on" insufficient proof. *State v. Avila,* 192 Wis. 2d 870, 889, 532 N.W.2d 423 (1995). The jury was instructed as follows regarding the requirements of Wis. Stat. § 940.02(2)(a), which closely follows the pattern instruction:

> Before you may find the defendant guilty of this offense, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following four elements were present: First, that the defendant delivered a substance; second, that the substance was Oxycodone; third, that the defendant thought or believed that the substance was Oxycodone, a controlled substance; and fourth, that Tanya [S.] used *the substance alleged to have been delivered by the defendant* and died as a result of that use.

(Emphasis added).

¶ 54. Patterson asserts that this instruction allowed the jury to find him guilty of first-degree reckless homicide by delivery of a controlled substance based on mere allegations. Specifically, Patterson takes issue

631

with the fourth element in the instruction, which he contends permitted the jury to find him guilty "on less than proof beyond a reasonable doubt." In response, the State points out that, when viewed as a whole, the jury instruction is not erroneous because the reference to "the substance alleged to have been delivered by the defendant" only directs the jury back to the first element of the instruction. The court of appeals agreed, explaining that "[t]he 'alleged' language in element four is plainly a reference to the substance Patterson was alleged to have delivered to Tanya S. in elements one and two of the crime. Those elements, in turn, require proof that Patterson actually delivered the Oxycodone." *Patterson,* 321 Wis. 2d 752, ¶ 32.

¶ 55. We agree that, considering the jury instruction as a whole, it is not reasonably likely that the jury misunderstood the burden of proof. Under this instruction, even to reach the challenged element, the jury must find that the State proved beyond a reasonable doubt that the defendant delivered Oxycodone to Tanya. Once the members of a jury reach the fourth element, we are satisfied that they will understand that the language refers them back to their previous finding, not that the burden has been lowered.[19] Therefore, the jury instruction does not erroneously relieve the State of its burden of proving all of the elements of Wis. Stat. § 940.02(2)(a) beyond a reasonable doubt.

---

[19] We also note that these instructions are not only sufficient, but necessary to ensure that the defendant is not prejudiced by the instruction. Any alternative to the phrase used in the jury instruction "alleged to have been delivered by the defendant" – such as referring to a "substance delivered by the defendant" – would have the effect of suggesting that the defendant is guilty of the first element before the jury has an opportunity to make that determination.

### D. Patterson's Prosecutorial Misconduct Claim

■■

¶ 56. We now turn to Patterson's final claim regarding alleged prosecutorial misconduct, which Patterson argues entitles him to a new trial. The circuit court denied Patterson's motion for a mistrial, and the court of appeals affirmed. It is well established that a motion for a mistrial based on prosecutorial misconduct is reviewed under an erroneous exercise of discretion standard. *Hoppe v. State,* 74 Wis. 2d 107, 119, 246 N.W.2d 122 (1976); *State v. Lettice,* 205 Wis. 2d 347, 352, 556 N.W.2d 376 (Ct. App. 1996). Such a motion "is addressed to the sound discretion of the [circuit] court and will not be reversed by this court unless there is evidence of [an erroneous exercise] of discretion and prejudice to the defendant." *Hoppe,* 74 Wis. 2d at 119.

¶ 57. Patterson argues that the circuit court erroneously exercised its discretion in refusing to grant a mistrial because the prosecutor's misconduct denied him due process. The alleged misconduct is based on four questions in which the prosecutor referred to another witness's statements or testimony. Patterson contends that in three instances, the prosecutor improperly impeached or refreshed the recollection of a witness with another witness's statements or testimony.[20] Patterson agrees with the court of appeals that in a fourth instance, the prosecutor violated *Haseltine,*

---

[20] Patterson concedes that these three questions were not *Haseltine* violations but nevertheless asserts that they were improper questions. Generally, Patterson asserts that the prosecutor continuously "attempted to shift the burden to the defendant" and improperly used another witness's statements or testimony to impeach witnesses or refresh their recollection. Patterson does not elaborate on how these questions would shift

120 Wis. 2d at 95–96, by asking a witness to opine on the truthfulness of another witness's statements. The State responds that the court of appeals correctly concluded that only one of the prosecutor's questions even arguably violated *Haseltine* and that any error did not prejudice Patterson.

■■■

¶ 58. We agree with the State that the circuit court did not erroneously exercise its discretion. Under *Haseltine,* an attorney may not ask a witness to testify about the truthfulness of another witness' testimony. *Id.* While such questions are improper, *Haseltine* violations do not result in reversible error unless the opinion testimony "creates too great a possibility that the jury abdicated its fact-finding role" to the witness and did not independently find the defendant's guilt. *Id.* at 96. In response to claims of prosecutorial misconduct, a new trial is appropriate only when improper questions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Neuser,* 191 Wis. 2d at 136. Under these guidelines, we examine the allegedly improper questions.

■■■

¶ 59. In the first instance, the prosecutor referred to another witness's testimony to refresh Janice Tappa's recollection when cross-examining her. The prosecutor asked Tappa, "[W]hat if Calvin had said that [Tanya] told him that she took two pills, would that help to refresh your recollection?"

---

the burden to the defendant or why the use of other witnesses' statements or testimony in the manner is improper if it is not a violation of *Haseltine.*

¶ 60. In the second instance, during the redirect examination of Patterson's brother, Daniel Perez, the prosecutor attempted to impeach his testimony by asking, "So if all other witnesses said that at 11:00 your mom was already home . . . that would be wrong?" .

¶ 61. In the third instance, the prosecutor referred to an exhibit outlining Patterson's statements to police and asked Investigator Strompolis about his recollection of Patterson's statements. Contrasting Patterson's statements to police with his mother's testimony, the prosecutor asked, "So if Loretta Patterson had testified that he kept his most recent Oxycontin 40–milligram prescription in his pants pocket, would this be the first time you heard this?" Before Investigator Strompolis could respond, Patterson's counsel objected, and the prosecutor rephrased the question.

¶ 62. The fourth instance Patterson asserts was a *Haseltine* violation also occurred during the prosecutor's cross-examination of Investigator Strompolis. While eliciting information about the investigator's interrogation of Misty Hale, the prosecutor asked, "Do you believe she was being truthful when she gave that information to you or did you stop the tape again?"

¶ 63. We conclude that the first three questions are not improper because the other witnesses' statements or testimony were used for impeachment purposes or to refresh the witness's recollection. We also agree with the court of appeals that these questions were not *Haseltine* violations because the prosecutor was not seeking to elicit the witness's opinion on whether those other witnesses' statements were true.

¶ 64. Regarding the fourth question, we agree with the court of appeals that while it may violate *Haseltine* because the prosecutor asked whether the witness believed another witness's statements were true, it did not result in an unfair trial. *See Patterson,* 321 Wis. 2d 752, ¶ 36. In her cross-examination of Investigator Strompolis, the prosecutor was responding to Patterson's counsel's suggestion that the police did not conduct an adequate investigation. Given this context, it becomes clear that the question was used to explain why Investigator Strompolis did not continue with his interrogation of Misty Hale, rather than to establish the truth or falsity of Hale's statements. We note that, under these circumstances, any error by the prosecutor in asking this question was harmless. *See* Wis. Stat. § 805.18(2); *State v. Lindell,* 2001 WI 108, ¶ 69, 245 Wis. 2d 689, 629 N.W.2d 223 (applying the harmless error statute to criminal proceedings). This particular question in this context did not "create[] too great a possibility that the jury abdicated its fact-finding role" to the witness or failed independently to find the defendant's guilt. *Haseltine,* 120 Wis. 2d at 96. Nor did this question or any of the other allegedly improper questions raised by Patterson "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Neuser,* 191 Wis. 2d at 136. The circuit court did not erroneously exercise its discretion in denying Patterson's motion for a mistrial.

## III. CONCLUSION

¶ 65. We affirm the court of appeals for the reasons stated above. In response to Patterson's first claim, we hold that convictions for both first-degree reckless homicide by delivery of a controlled substance and contributing to the delinquency of a child with death as

636

a consequence are not multiplicitous because, in light of the four-part analysis outlined in *Davison,* 263 Wis. 2d 145, ¶ 50, we conclude that the legislature intended to permit multiple punishments for these offenses. On this issue, we affirm the court of appeals, but on different grounds. We conclude that the convictions are not multiplicitous because contributing to the delinquency of a child with death as a consequence is not a "type of criminal homicide" for the purposes of Wis. Stat. § 939.66(2), and further that the legislature intended to permit cumulative punishments for that offense and first-degree reckless homicide by delivery of a controlled substance.

¶ 66. Regarding the second issue, we hold that Wis. Stat. § 948.40(1) proscribes contributing to the delinquency of any child under the age of eighteen, and thus Patterson's conviction was proper. Our interpretation of Wis. Stat. § 948.40(1) is informed by the plain language and legislative history of the definition of "child" in Wis. Stat. § 948.01(1), which excludes those over seventeen only for the "purposes of prosecuting" such person.

¶ 67. Third, we conclude that the jury instruction for first-degree reckless homicide by delivery of a controlled substance was not erroneous because the jury was properly advised that the burden of proving all elements of the crime beyond a reasonable doubt rested on the State. Patterson's claim that the wording of the fourth element of that crime allowed the jury to convict him based on allegations alone is not reasonable, especially when one looks at the jury instructions as a whole.

¶ 68. Fourth, there was no prosecutorial misconduct warranting a new trial because the single *Haseltine* violation in the seven-day trial in this case did not "so infect[] the trial with unfairness as to make the resulting

conviction a denial of due process." *Neuser,* 191 Wis. 2d at 136. We therefore affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.