COURT OF APPEALS
DECISION
DATED AND FILED

October 23, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP815-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF380

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

THEUS H. THOMAS,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Kenosha County: JASON A. ROSSELL, Judge. *Affirmed.*

Before Gundrum, P.J., Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Theus H. Thomas appeals from a judgment of conviction for possession of heroin with intent to deliver, on or near school premises, as a second or subsequent offense. Thomas argues that the circuit court should have granted his motion to suppress evidence obtained through execution of a search warrant. More specifically, Thomas contends that the court erred in concluding that the affidavit in support of the search warrant established probable cause that a search of Thomas' residence would disclose evidence of a "Len Bias" homicide.[1] Thomas also argues that the court erred in finding reasonable suspicion to support the no-knock provision of the warrant. We affirm.

## BACKGROUND

¶2 Thomas was arrested based on evidence found when police executed a no-knock search warrant at his residence in Kenosha. The warrant was based primarily on the following facts provided by Detective Eric Traxler of the Kenosha Police Department: (1) Young, who was forty-nine years old, collapsed on a sidewalk and died; (2) Young had a baggie of a substance that looked like heroin and a rolled up dollar bill with residue of that heroin-like substance on it in his pocket when he died; (3) After Young collapsed, his girlfriend, Camesia Moore, told police and bystanders that she thought Young was overdosing; (4) Moore told police that Young had purchased heroin from Thomas the

---

[1] A "Len Bias" homicide refers to "[f]irst-degree reckless homicide by delivery of a controlled substance" and "was created … to prosecute anyone who provides a fatal dose of a controlled substance." *State v. Patterson*, 2010 WI 130, ¶37, 329 Wis. 2d 599, 790 N.W.2d 909; *see* WIS. STAT. § 940.02(2)(a) (2021-22). "The legislature developed this law … in the wake of the tragic death of a University of Maryland basketball star by the same name from a cocaine overdose." *Patterson*, 329 Wis. 2d 599, ¶37.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

afternoon before he died; (5) Moore said that she had bought heroin from Thomas a week earlier; (6) Moore told police that Young regularly sold heroin for Thomas; and (7) Thomas called Moore while she was still at the hospital with Young and acknowledged that he had sold heroin to Young the day before; and (8) Thomas instructed Moore not to talk to "the police about this."

¶3 Before seeking a search warrant for Thomas' residence, police confirmed Thomas' identity with Moore. Police further corroborated the address that Moore gave for Thomas. They also learned that Thomas was on active supervision for a felony drug conviction for manufacture or delivery of cocaine at the time of Young's death.

¶4 Traxler indicated in his affidavit that police believed they would find evidence in Thomas' residence to support a Len Bias homicide. When executing the search warrant for Thomas' residence, officers found significant amounts of heroin and marijuana, items used for packaging and selling drugs, and a substantial amount of cash. Preliminary autopsy results released after the execution of the warrant reflected an opinion that Young died of natural causes "not directly related to his heroin usage." Therefore, the State chose not to charge Thomas with a Len Bias homicide and instead charged him with possession with intent to deliver heroin, and several other drug-related offenses, based on evidence seized during the warrant search.

¶5 Thomas filed a motion to suppress the fruits of the search, arguing that all such evidence was unlawfully obtained. The circuit court held a hearing at which Traxler testified. After considering arguments from the parties, the court denied the suppression motion. The court held that probable cause supported the issuance of the warrant and that reasonable suspicion supported the no-knock

3

provision. Thomas later entered a plea to possession with intent to deliver heroin, and the four remaining charges were dismissed and read in. He was sentenced to five years of initial confinement and four years of extended supervision. Thomas appeals.

## DISCUSSION

¶6    On appeal, Thomas argues that the circuit court erred in denying his motion to suppress because the search warrant was unsupported by probable cause. He further contends that there was not reasonable suspicion sufficient to justify the no-knock provision in the warrant.

¶7    In our review of a motion to suppress, we apply a two-step standard of review: (1) we first review the trial court's findings of fact, and will uphold them unless they are clearly erroneous; and (2) we then "review the application of constitutional principles to those facts de novo." *See* ***State v. Eason***, 2001 WI 98, ¶9, 245 Wis. 2d 206, 629 N.W.2d 625.

*Probable Cause for the Search Warrant*

¶8    In reviewing whether the circuit court erred in denying the motion to suppress, we first discuss the sufficiency of the search warrant. A search warrant will "pass constitutional muster" as long as it complies with three requirements:

> (1) prior authorization by a neutral, detached magistrate; (2) a demonstration upon oath or affirmation that there is probable cause to believe that evidence sought will aid in a particular conviction for a particular offense; and (3) a particularized description of the place to be searched and items to be seized.

***State v. Tate***, 2014 WI 89, ¶28, 357 Wis. 2d 172, 849 N.W.2d 798 (citation omitted). Thomas argues that the second requirement was not met because

4

Traxler's affidavit made at the time of Young's death did not establish probable cause to believe that Young died as a result of heroin use.[2]

¶9     "Probable cause to issue a warrant exists if the information set forth in support of the warrant establishes a 'fair probability that a search of the specified premises would uncover evidence of wrongdoing.'" *State v. Hillary*, 2017 WI App 67, ¶8, 378 Wis. 2d 267, 903 N.W.2d 311 (citation omitted).  In our review, we "examine[] the totality of the circumstances presented to the warrant-issuing commissioner to determine whether the warrant-issuing commissioner had a substantial basis for concluding that there was a fair probability that a search of the specified premises would uncover evidence of wrongdoing." *State v. Romero*, 2009 WI 32, ¶3, 317 Wis. 2d 12, 765 N.W.2d 756.  "This court 'accord[s] great deference to the warrant-issuing judge's determination of probable cause, and that determination will stand unless the defendant establishes that the facts are clearly insufficient to support a finding of probable cause.'" *Id.*, ¶18 (citation omitted).

¶10     Considering the totality of the circumstances, the facts available to the issuing judge when considering the warrant, set forth in the background section above, support the following inferences:  that heroin use had some role in Young's death; that Young obtained the heroin that he likely used before his death from Thomas; that Thomas had been regularly dealing heroin; that Thomas had

---

[2] Thomas made additional arguments in the circuit court regarding the alleged lack of probable cause that he does not raise in his brief to this court.  We deem these arguments abandoned on appeal and do not address them further.  *See State ex rel. Peckham v. Krenke*, 229 Wis. 2d 778, 782 n.3, 601 N.W.2d 287 (Ct. App. 1999) (explaining that issues raised in the circuit court but not argued in a party's appellate brief are deemed abandoned and will not be considered).

dealt heroin to Young as recently as the day before Young's death; that Thomas was aware that the heroin he sold Young may have contributed to his death; and that heroin would be found in Thomas' residence, where he had been living for at least a month. Those facts and inferences are sufficient to support the issuing judge's determination that there was a fair probability that police would find evidence of a crime in Thomas' residence. *See id,*; *see also State v. Ward*, 2000 WI 3, ¶¶29–30, 231 Wis. 2d 723, 604 N.W.2d 517 (holding facts that suspect sold large amounts of drugs and there was only one address associated with suspect established probable cause to search that address). A fair probability was sufficient, *see Romero*, 317 Wis. 2d 12, ¶18, and at least a fair probability that Young had overdosed on heroin existed.

¶11 Implicit in our conclusion that the facts and inferences from the affidavit supported issuance of the warrant is a rejection of Thomas' argument that there was insufficient probable cause because police lacked certainty when seeking the warrant that Young had used heroin and died therefrom. Probable cause simply requires a probability, not absolute certainty. *State v. Robinson*, 2010 WI 80, ¶29, 327 Wis. 2d 302, 786 N.W.2d 463. The police and the issuing judge did not need to be certain that heroin caused Young's death before seeking and issuing a warrant to investigate Thomas. As the circuit court aptly observed: "It's common sense. A person's got heroin on their person, they become unresponsive and die, the common sense answer is they died of a heroin overdose because that's all the test requires." We agree, and we thus conclude that probable cause supported the issuance of the search warrant. Therefore, the court did not err in denying Thomas' motion to suppress the fruits of the warrant on that basis.

*Reasonable Suspicion for the No-Knock Provision*

¶12    We turn next to Thomas' argument that the evidence from the search must be suppressed because the no-knock provision of the warrant was not justified. Specifically, Thomas contends that there was insufficient evidence to support a reasonable suspicion that knocking and announcing would have been dangerous or allowed for the destruction of evidence, as required to justify the issuance of a no-knock warrant. *See **Richards v. Wisconsin***, 520 U.S. 385, 394 (1997).

¶13    Our supreme court has explained that "the required showing of reasonable suspicion is low, and depends upon the facts and circumstances of each case." ***Eason***, 245 Wis. 2d 206, ¶19 (citing ***Richards***, 520 U.S. at 394). In this case, several specific facts relevant to Thomas and the investigation of Young's death supported reasonable suspicion for the no-knock provision. As discussed above, the facts and circumstances of the case reflected that Thomas was dealing heroin, he sold Young heroin hours before he died, Thomas was aware of Young's death, and Thomas knew that he might be implicated in a law enforcement investigation of Young's death. In addition, Thomas was on probation for a felony drug delivery conviction, which meant that he had experience with drugs and law enforcement and was potentially motivated to destroy evidence of his dealing heroin to avoid revocation and new charges. Finally, Traxler's training reflecting the connection between guns and drugs and the risk that Thomas would destroy drug evidence added to the quantum of evidence supporting reasonable suspicion for the no-knock provision.

¶14    Under the circumstances, we conclude that the issuing judge properly authorized the no-knock provision, and the circuit court correctly upheld

that decision in denying the motion to suppress. Because the no-knock provision in the warrant did not violate Thomas' constitutional rights, it does not provide a basis to suppress the fruits of the search.

## CONCLUSION

¶15 Based on our conclusions that probable cause supported the issuance of the search warrant and there was reasonable suspicion to justify the no-knock provision in the warrant, we conclude that the circuit court properly denied Thomas' motion to suppress the evidence obtained through execution of the search warrant.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.