STATE of Wisconsin, Plaintiff-Respondent,

v.

Patrick R. PATTERSON, Defendant-Appellant.†

Court of Appeals

*No. 2008AP1968–CR. Submitted on briefs May 8, 2009.
—Decided October 1, 2009.*

2009 WI App 161

(Also reported in 776 N.W.2d 602.)

† Petition to Review granted 3/17/10.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David R. Karpe* of *Karpe Law Office*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Michael C. Sanders*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Dykman, P.J., Lundsten and Higginbotham, JJ.

¶ 1. LUNDSTEN, J.   Patrick Patterson gave a controlled substance to seventeen-year-old Tanya S., and she died as a result. Among other crimes, Patterson was convicted of first-degree reckless homicide by delivery of a controlled substance, under WIS. STAT. § 940.02(2)(a), and contributing to the delinquency of a child with death as a consequence, under WIS. STAT. § 948.40(4)(a).[1] Patterson argues that these two charges are multiplicitous and that the evidence was insufficient to convict him for contributing to the delinquency of Tanya S. because it is legally impossible to contribute to the delinquency of someone who is seventeen years old or older. We reject these arguments and others that Patterson makes. We affirm the judgment of conviction and the order denying Patterson's motion for postconviction relief.

## Background

¶ 2.   Patterson gave or sold Oxycodone, a controlled narcotic, to multiple individuals. Important here, he gave Oxycodone to Tanya S. at a time when she was seventeen years old, and she died as a result of ingesting the drug.

¶ 3.   The State charged Patterson with first-degree reckless homicide by delivery of a controlled

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

substance, contributing to the delinquency of a child with death as a consequence, and four counts of delivering a schedule I or II narcotic, all as a repeater. A jury trial was held. At the close of evidence, Patterson moved for a mistrial based on an allegation that the prosecutor presented testimony from witnesses as to whether other witnesses were telling the truth, commonly referred to as a *Haseltine* violation.[2] The circuit court denied the motion. The jury found Patterson guilty of all of the charges except for one of the delivery counts. We reference additional facts as needed below.

## Discussion

### 1. Multiplicity

¶ 4.   Patterson argues that two of his convictions are multiplicitous: first-degree reckless homicide by delivery of a controlled substance and contributing to the delinquency of a child with death as a consequence. We disagree.

¶ 5.   Our framework for analysis was succinctly summarized in *State v. Eaglefeathers*, 2009 WI App 2, 316 Wis. 2d 152, 762 N.W.2d 690 (Ct. App. 2008), *review denied*, 2009 WI 34, 316 Wis. 2d 717, 765 N.W.2d 578 (No. 2007AP845–CR):

> [M]ultiplicity claims are examined under a two-part test. The first part asks whether the offenses are identical in law and in fact. The second part examines whether the legislature intended to authorize multiple

---

[2] *State v. Haseltine*, 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984).

punishments. If it is determined under the first part of the test that the charged offenses are identical in both law and fact, a presumption arises under the second part of the test that the legislature did not intend to authorize cumulative punishments. Conversely, if the charged offenses are not identical in law and in fact, a presumption arises that the legislature did not intend to preclude cumulative punishments.

*Id.*, ¶ 7 (citations omitted). Whether charges are multiplicitous is a question of law subject to *de novo* review. *State v. Schaefer*, 2003 WI App 164, ¶ 43, 266 Wis. 2d 719, 668 N.W.2d 760.

¶ 6.  Patterson correctly concedes that the two offenses are not identical in law. As is pertinent here, a conviction of first-degree reckless homicide by delivery of a controlled substance requires proof that the defendant caused the death of a person by delivering a controlled substance; it applies regardless whether a child victim is involved. Wis. Stat. § 940.02(2)(a).[3] In contrast, a conviction for contributing to the delinquency of a child with death as a consequence need not

---

[3] The pattern jury instruction defines first-degree reckless homicide by delivery of a controlled substance as follows:

> 1. The defendant delivered a substance . . . .
>
> 2. The substance was (name controlled substance).
>
> 3. The defendant knew or believed that the substance was [(name controlled substance)] [a controlled substance. A controlled substance is a substance the delivery of which is prohibited by law.] . . .
>
> 4. (Name of victim) used the substance alleged to have been delivered by the defendant and died as a result of that use.

Wis JI—Criminal 1021 (footnotes omitted).

involve controlled substances and applies only when there is a child involved. WIS. STAT. § 948.40(4)(a).[4]

¶ 7.   Accordingly, we must presume that the legislature intended cumulative punishments. Patterson has the burden to show a clear legislative intent to the contrary. *Eaglefeathers*, 316 Wis. 2d 152, ¶ 15.

■

¶ 8.   We determine legislative intent for purposes of a multiplicity claim using four factors:   (1) statutory language; (2) legislative history and context; (3) the nature of the conduct involved; and (4) the appropriateness of multiple punishments. *Id.*

¶ 9.   The legislative intent arguments that Patterson makes go primarily to the first and second factors. However, Patterson's arguments based on these two factors have, in effect, already been resolved against him in *State v. Davison*, 2003 WI 89, 263 Wis. 2d 145, 666 N.W.2d 1. Like the defendant in *Davison*, Patterson argues that WIS. STAT. § 939.66 shows a clear legislative intent not to allow punishment for both of his crimes.

¶ 10.   Comparable subsections of the same statute are at the heart of both Patterson's multiplicity challenge and the challenge made in *Davison*. WISCONSIN STAT. § 939.66 provides, in pertinent part:

> Upon prosecution for a crime, the actor may be

---

[4] The pattern jury instruction defines contributing to the delinquency of a child with death as a consequence as follows:

1. (Name of child) was under the age of 18 years . . . .

2. The defendant intentionally encouraged or contributed to the delinquency of (name of child).

3. Death of (name of child) was a consequence of intentionally encouraging or contributing to the delinquency of (name of child).

WIS JI—CRIMINAL 2170A (footnote omitted).

759

convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

. . . .

(2) A crime which is a less serious type of criminal homicide than the one charged.

(2m) A crime which is a less serious or equally serious type of battery than the one charged.

In *Davison*, subsection (2m), covering battery crimes, was at issue. Here, Patterson points to subsection (2), covering homicide crimes.

¶ 11. There are two differences between the subsections, but neither benefits Patterson. First, subsection (2) covers homicides, and subsection (2m) covers batteries. Second, subsection (2) covers only "less serious" types of the crime, whereas subsection (2m) covers "less serious or equally serious" types of the crime. Patterson does not suggest any reason why either of these differences matters for purposes of determining whether the legislature intended WIS. STAT. § 939.66(2) or (2m) to preclude punishment for two homicide crimes or two battery crimes based on the same conduct.[5]

---

[5] The State argues, as it did in the circuit court, that Patterson's reliance on WIS. STAT. § 939.66(2) fails because the term "homicide" in § 939.66(2) applies only to homicide crimes listed in WIS. STAT. ch. 940 and does not include the crime of contributing to the delinquency of a child with death as a consequence (WIS. STAT. § 948.40(4)(a)). The circuit court disagreed, concluding that "[n]o statutory or case law support for this position has been presented." We need not reach the State's argument. Rather, we assume, without deciding, that "homi-

¶ 12.    Patterson argues that WIS. STAT. § 939.66(2) shows a clear legislative intent not to allow punishment for both reckless homicide and contributing to the delinquency of a child with death as a consequence. However, this argument, albeit in the context of § 939.66(2m), was rejected in *Davison*. *Davison* explained that the statute is ambiguous and the statute's legislative history does not show a legislative intent to prevent cumulative punishments. *Davison*, 263 Wis. 2d 145, ¶¶ 74, 90. Instead, the *Davison* court concluded that § 939.66(2m) can reasonably be interpreted as allowing two convictions for battery as long as two battery crimes have been *charged. See Davison*, 263 Wis. 2d 145, ¶¶ 65–67. The reasons why the *Davison* court reached these conclusions need not be repeated here. Rather, what matters is that the *Davison* court effectively rejected the proposition that § 939.66(2) shows a clear legislative intent not to allow punishment for both a charged criminal homicide and a charged less serious type of criminal homicide.

¶ 13.    Patterson argues that the legislative history of WIS. STAT. § 939.65 supports his interpretation of WIS. STAT. § 939.66(2).[6] He points to a comment to § 939.65, cited in *Davison*, which states:

> "This section states a rule of pleading, and does not purport to state the limitations on multiple sentences for the same act or the limitations on multiple convictions and subsequent prosecutions for the same act

cide" in § 939.66(2) includes contributing to the delinquency of a child with death as a consequence.

[6] WISCONSIN STAT. § 939.65 provides:

**Prosecution under more than one section permitted.** Except as provided in s. 948.025(3), if an act forms the basis for a crime punishable under more than one statutory provision, prosecution may proceed under any or all such provisions.

761

which may be included in the constitutional double jeopardy rule. *For some of the limitations which have been incorporated in the code, see sections 339.66* [now 939.66], 339.71 [now 939.71] and 339.72 [now 939.72]."

*See Davison*, 263 Wis. 2d 145, ¶ 51 n.19 (citation omitted; emphasis added). Patterson argues that this comment makes it "obvious" that the legislature intended § 939.66 as a limit on § 939.65.

¶ 14.   Patterson's reliance on this comment fails for at least two reasons. First, there is no dispute that WIS. STAT. § 939.66 is a limitation on WIS. STAT. § 939.65. The question is what kind of limit. Second, the *Davison* court plainly was aware of the comment, yet apparently did not find it evidence that the legislature intended § 939.66(2m) to be a blanket prohibition on multiple battery convictions for the same conduct. The import of the comment can be no different for purposes of § 939.66(2) and multiple homicide convictions.

¶ 15.   Patterson also relies on *State v. Lechner*, 217 Wis. 2d 392, 576 N.W.2d 912 (1998).[7] Our response is twofold. First, the *Davison* court acknowledged the *Lechner* language that arguably supports Patterson and, in doing so, implicitly rejected the proposition that the *Lechner* interpretation of WIS. STAT. § 939.66 was the only reasonable one. *See Davison*, 263 Wis. 2d 145,

---

[7] Specifically, the following language in *State v. Lechner*, 217 Wis. 2d 392, 576 N.W.2d 912 (1998), is most pertinent:

[T]he legislature, by enacting WIS. STAT. § 939.66(2), has specifically addressed the issue of multiple homicide convictions for a criminal act causing a single death. Where a single act of a defendant forms the basis for a crime punishable under more than one statutory provision, WIS. STAT. § 939.66(2) provides that a defendant may not be convicted for two criminal homicides if one is "a less serious type of criminal homicide."

*Id.* at 407–08.

¶¶ 61–67. Second, to the extent *Lechner* and *Davison* are inconsistent, we are bound to follow the more recent *Davison* decision. *See State v. Clark*, 179 Wis. 2d 484, 493, 507 N.W.2d 172 (Ct. App. 1993) ("When decisions of our supreme court appear to be inconsistent, we follow the court's most recent pronouncement.").

¶ 16. We now turn our attention to Patterson's arguments based on the third and fourth legislative intent factors, the nature of the conduct involved and the appropriateness of multiple punishments.

¶ 17. Patterson argues that the nature of the proscribed conduct is the same for both crimes because, "in each case, the proscribed conduct was giving drugs to the victim that caused her death." This argument misses the mark. The fact that the underlying conduct is the same is not, by itself, enough to show that the legislature intended only one punishment. All it shows here is that the two offenses are identical in fact, a point that is not in dispute.

¶ 18. Furthermore, the first-degree reckless homicide charge in this case falls under Wis. Stat. § 940.02(2)(a), a special category of first-degree reckless homicide that targets a particular situation, that is, death caused by manufacturing, distributing, or delivering a controlled substance. As we have indicated, that statute applies regardless whether a child is involved. Wisconsin Stat. § 948.40(4)(a), in contrast, need not involve controlled substances and applies only when there is a child involved.[8] Although § 948.40(4)(a) requires death as a consequence, it focuses on the protec-

---

[8] The State argues that the death required under Wis. Stat. § 948.40(4)(a) need not be that of the child. For example, a defendant might provide controlled substances to a child who then drives while under the influence of those substances and

tion of children and the prevention of their delinquency. This is evidenced by, among other things, the legislature's decision to include it in the chapter of the Wisconsin Statutes covering crimes against children (WIS. STAT. ch. 948), not in the chapter covering crimes against life and bodily security (WIS. STAT. ch. 940).

¶ 19.  In short, WIS. STAT. § 940.02(2)(a) and WIS. STAT. § 948.40(4)(a) address two different categories of proscribed conduct that differ markedly in their essential nature. That Patterson's particular conduct happens to fall within a relatively limited area covered by both statutes does not show that the legislature intended only one punishment.

¶ 20.  For essentially the same reasons, we are not persuaded that punishment for both crimes would be inappropriate. *See Davison*, 263 Wis. 2d 145, ¶ 98 (stating that "[o]ften . . ., consideration of the appropriateness of multiple punishments is informed by our conclusions regarding the nature of the proscribed conduct," and determining that there was "no need to repeat extensively the analysis from the previous category"). Patterson argues that multiple punishments are not appropriate because the harm caused by the two crimes "do[es] not differ significantly" and because "[t]he act generating the harm is the same." This is simply another way of stating arguments that we have already rejected.

---

causes an accident resulting in the death of a third party. We need not address the State's argument in order to conclude that the statute applies only when there is a child involved. Regardless of whose death results, the statute requires the involvement of a child because it requires the defendant to contribute to the delinquency of a child. Thus, the State's argument is a question for another day.

¶ 21.    As we have seen, Patterson's arguments are for the most part foreclosed by *Davison*. To the extent he asserts that there is something different about this case because of the specific crimes involved, he has cited nothing to support that assertion. Thus, we reject Patterson's multiplicity challenge.

### 2. Sufficiency Of The Evidence

¶ 22.    Patterson makes two sufficiency of the evidence claims, and we address each separately.

### a. Evidence That Tanya S. Possessed A Controlled Substance

¶ 23.    Patterson argues there was insufficient evidence that he contributed to the delinquency of Tanya S. because the alleged delinquency was that Tanya S. possessed a controlled substance, Oxycodone, and the evidence, according to Patterson, does not show that Tanya S. "possessed" the drug. The State concedes, at least implicitly, that the prosecution's theory in this case required a showing that Tanya S. possessed Oxycodone within the meaning of the laws prohibiting drug possession. Accordingly, our focus is on whether there was sufficient evidence to support a finding that Tanya S. possessed Oxycodone as that term is used in drug possession law.

¶ 24.    "[I]n reviewing the sufficiency of the evidence to support a conviction, an appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have

765

found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). Additionally, we consider the reasonable inferences the jury could draw from the evidence presented. *State v. Toliver*, 104 Wis. 2d 289, 293, 311 N.W.2d 591 (1981).

¶ 25.   There is no dispute that testing revealed that Tanya S. had Oxycodone in her system at the relevant time. However, as Patterson argues, the presence of drugs in someone's system, standing alone, is not sufficient evidence to support a conviction for possession of a controlled substance. *See State v. Griffin*, 220 Wis. 2d 371, 381, 584 N.W.2d 127 (Ct. App. 1998). "Possession" in this context requires evidence that the individual had a substance in his or her control. *See id.* at 381 (citing WIS JI—CRIMINAL 920). Still, as we explained in *Griffin*, " 'when combined with other corroborating evidence of sufficient probative value, evidence of [ingestion] can be sufficient to prove possession.' " *Id.* at 381 (citation omitted). That is the situation here.

¶ 26.   In addition to evidence that Tanya S.'s system contained Oxycodone, the State directs us to the following evidence regarding Tanya S.'s handling or ingestion of Oxycodone during the time leading up to her death:

- One witness testified that she saw Patterson give what she thought to be Oxycodone pills to Tanya S. three times. Patterson would put the pill in Tanya S.'s mouth, and Tanya S. would chew or swallow it.

- A second witness testified that she saw Patterson give similarly described pills to Tanya S. three times, at least once putting the pill in Tanya S.'s mouth.

766

- A third witness testified that he saw Patterson offer a pill or pills to Tanya S.

- A fourth witness testified that he saw Patterson encourage Tanya S. to snort a line of OxyContin, and that Tanya S. snorted it.

- A fifth witness testified that she saw Patterson give four Oxycodone pills to Tanya S. and tell Tanya S. to chew them up, which Tanya S. did.

This evidence is sufficient to support a finding that Tanya S. had the requisite control over Oxycodone.[9]

### b. Contributing To The Delinquency Of A Seventeen-Year-Old

¶ 27. Patterson's second sufficiency of the evidence argument has implications beyond the particular facts here because it is directed at whether a recurrent situation is covered by WIS. STAT. § 948.40. Patterson argues that, even assuming he gave Tanya S. Oxycodone, he could not have contributed to the delinquency of Tanya S. because she was seventeen years old at the time. Patterson argues that it is legally impossible to contribute to the delinquency of a person who is seventeen years old or older. Therefore, according to Patterson, the evidence was insufficient because there was no evidence that he contributed to the delinquency of someone who was younger than seventeen.

[9] Patterson makes a one-paragraph argument that, even if Tanya S. did possess drugs, she could have asserted a defense of coercion or necessity based on evidence that Patterson forced her to take the drugs. This argument is inadequately developed and, therefore, we address it no further. *See State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals may decline to address inadequately developed arguments).

■■■■■■■■■■■■

■■■■■■■■■■

■

¶ 28. Patterson's sufficiency argument is based on the following statutory interpretation argument:

(1) The crime of contributing to the delinquency of a child requires proof that a defendant encouraged or contributed to the "delinquency" of a named person.[10]

(2) WISCONSIN STAT. § 938.02 defines "delinquent" as a "juvenile who is 10 years of age or older" and "less than 18 years of age," but there is an exception for seventeen-year-olds.[11]

(3) The exception provides that " 'juvenile' does not include a person who has attained 17 years of age" if that person is "alleged to have violated [a law]." WIS. STAT. § 938.02(10m).

(4) If the named person was seventeen at the time, the person's law violation (here illegal drug pos-

---

[10] WISCONSIN STAT. § 948.40(1), which forms the basis for Patterson's conviction under § 948.40(4)(a), states that "[n]o person may intentionally encourage or contribute to the delinquency of a child." For a complete summary of the elements of this crime as set forth in the pattern jury instruction, *see* footnote 4.

[11] WISCONSIN STAT. § 938.02 is the statute that defines terms for purposes of WIS. STAT. ch. 938, the juvenile justice code. Section 938.02 provides, in pertinent part:

> **(3m)** "Delinquent" means a juvenile who is 10 years of age or older who has violated any state or federal criminal law . . . .
>
> . . . .
>
> **(10m)** "Juvenile" means a person who is less than 18 years of age, except that for purposes of investigating or prosecuting a person who is alleged to have violated a state or federal criminal law or any civil law or municipal ordinance, "juvenile" does not include a person who has attained 17 years of age.

session) is not cause to categorize the person as "delinquent" within the meaning of § 938.02(3m).

(5)  It follows that it is impossible to contribute to the delinquency of a person who is seventeen years old or older because such a person is too old to be categorized as a delinquent.

The interpretation of a statute is a question of law that we review *de novo. State v. Volk,* 2002 WI App 274, ¶ 34, 258 Wis. 2d 584, 654 N.W.2d 24.

■■

¶ 29.  We will assume, for purposes of Patterson's argument, that the definition of "juvenile" in WIS. STAT. § 938.02 applies for purposes of defining "delinquency" in WIS. STAT. § 948.40. Nonetheless, Patterson's statutory analysis ignores the fact that a seventeen-year-old is only excepted from the definition of "juvenile" for a single purpose, the "purpose[] of investigating or prosecuting" the "person who is less than 18 years of age." *See* § 938.02(10m). Here, the question is not whether Tanya S. is a "juvenile" for purposes of prosecuting her, but instead for purposes of prosecuting Patterson. Thus, Tanya S. was a "juvenile" for purposes of Patterson's prosecution for contributing to the delinquency of a child with death as a consequence.[12]

---

[12] We note that the WIS. STAT. ch. 948 definition of "child" tracks the WIS. STAT. ch. 938 definition of "juvenile." WISCONSIN STAT. § 948.01(1) states the definition of a "child" in ch. 948, and provides: " 'Child' means a person who has not attained the age of 18 years, except that for purposes of prosecuting a person who is alleged to have violated a state or federal criminal law, 'child' does not include a person who has attained the age of 17 years." Thus, to the extent Patterson is also arguing that Tanya S. was not a "child" under the statutes, our analysis would be the same.

### 3. *Jury Instruction*

¶ 30.   Patterson argues that the circuit court erroneously instructed the jury on the first-degree reckless homicide charge under WIS. STAT. § 940.02(2)(a). His focus is on the use of the term "alleged" in the fourth element of the instruction given to the jury:

> First, that the defendant delivered a substance; second, that the substance was Oxycodone; third, that the defendant thought or believed that the substance was Oxycodone, a controlled substance; and fourth, that Tanya [S.] used the substance *alleged* to have been delivered by the defendant and died as a result of that use.

(Emphasis added.)[13]

¶ 31.   Patterson concedes that we must examine the instruction as a whole and that the dispositive question is whether there is a reasonable likelihood that the jury misunderstood the instruction. *See State v. Avila*, 192 Wis. 2d 870, 889, 532 N.W.2d 423 (1995). He argues, however, that the use of the word "alleged" in the fourth element makes it reasonably likely that the jury would have understood that a conviction could be based on a mere *allegation* that Patterson delivered the

---

Patterson argues in the alternative that the statutory scheme is ambiguous and that, given that ambiguity, he should prevail under the rule of lenity. The rule of lenity "generally establishes that ambiguous penal statutes should be interpreted in favor of the defendant." *State v. Jackson*, 2004 WI 29, ¶ 41, 270 Wis. 2d 113, 676 N.W.2d 872. We do not agree with Patterson that the statutes as applied here are ambiguous and, therefore, we need not reach Patterson's lenity argument.

[13] This jury instruction directly tracks the pattern instruction, WIS JI—CRIMINAL 1021.

drug to Tanya S. This argument is flawed because it does not view the instruction as a whole.

¶ 32. The "alleged" language in element four is plainly a reference to the substance Patterson was alleged to have delivered to Tanya S. in elements one and two of the crime. Those elements, in turn, require proof that Patterson actually delivered the Oxycodone. We therefore reject Patterson's argument that the jury instruction was erroneous.

### 4. Alleged Prosecutorial Misconduct

██ ██

¶ 33. Patterson argues that we should overturn his convictions based on prosecutorial misconduct. The circuit court denied Patterson's motion for a mistrial on this ground, and Patterson concedes that we review the circuit court's denial only for an erroneous exercise of discretion. *See State v. Lettice*, 205 Wis. 2d 347, 351–52, 556 N.W.2d 376 (Ct. App. 1996); *State v. Bembenek*, 111 Wis. 2d 617, 634, 331 N.W.2d 616 (Ct. App. 1983). The underlying question is whether the prosecutor's conduct " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *State v. Neuser*, 191 Wis. 2d 131, 136, 528 N.W.2d 49 (Ct. App. 1995) (citation omitted).

¶ 34. Patterson points to four instances of alleged misconduct during his seven-day trial. He contends that in each instance the prosecutor ran afoul of the rule that "[n]o witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically competent witness is telling the truth." *State v. Haseltine*, 120 Wis. 2d 92, 96, 352 N.W.2d 673 (Ct. App. 1984).

¶ 35. The first three alleged instances of misconduct are similar. In each instance, the prosecutor sought to demonstrate the possible unreliability of one witness's recollection by using seemingly inconsistent recollections of another witness. For example, in one instance the prosecutor asked: "So if all other witnesses said that at 11:00 your mom was already home . . . that would be wrong?" We see no *Haseltine* problem with these three instances because the prosecutor was not asking a witness to opine as to whether another witness was telling the truth.

¶ 36. The fourth alleged instance does appear to have involved a *Haseltine* violation. The prosecutor asked a police investigator: "Do you believe [a witness the investigator interviewed] was being truthful when she gave [certain] information to you . . .?" The investigator answered, "I believe she was being truthful." It does not appear that this exchange was offered for any purpose other than bolstering the credibility of the other witness. *Cf. State v. Snider*, 2003 WI App 172, ¶ 27, 266 Wis. 2d 830, 668 N.W.2d 784 (detective's testimony offered to show the detective's thought process during his investigation); *State v. Smith*, 170 Wis. 2d 701, 718–19, 490 N.W.2d 40 (Ct. App. 1992) (a detective's testimony that he did not believe a witness was properly introduced to show why he continued interrogating the witness). Accordingly, we will assume that the exchange ran afoul of *Haseltine*.

¶ 37. Still, this single instance in the context of a seven-day trial does not persuade us that the trial was " 'so infected . . . with unfairness as to make the resulting conviction a denial of due process.' " *Neuser*, 191 Wis. 2d at 136 (citation omitted). Patterson suggests no

reason why this portion of the testimony was particularly important. Accordingly, Patterson has not persuaded us that the circuit court erroneously exercised its discretion when it denied his motion for a mistrial based on alleged prosecutorial misconduct.

## Conclusion

¶ 38. For the above reasons, we affirm the circuit court.

*By the Court.*—Judgment and order affirmed.