PER CURIAM.
¶1 Sheldon Miller appeals the judgment of conviction, following a jury trial, for first degree child sexual assault involving sexual contact with a person under age 13 as a persistent repeater. Miller makes the following arguments: (1) his trial counsel provided ineffective assistance by failing to object to remarks by a prosecutor about the victim having "cognitive delays"; (2) the circuit court erroneously exercised its discretion in allowing the State to admit "other-acts" evidence in the form of allegations regarding Miller's sexual assaults of two boys in 1990; and (3) the circuit court violated his rights to due process and a fair trial by allegedly misstating the State's burden of proof during jury selection and by delaying the reading of the standard burden of proof instruction to the jury. Miller also apparently intends to make an ineffective assistance of counsel argument based on the cumulative effect of alleged acts of deficient performance by trial counsel. We reject each argument and accordingly affirm.
BACKGROUND
¶2 Miller was charged with first degree sexual assault of a child under the age of 13, as a persistent repeater. See WIS. STAT. §§ 948.02(1)(e), 939.62(2m)(b)2. (2017-18).[1] The State alleged that Miller intentionally touched the penis of an 11-year-old boy, through the boy's clothing, with the intent to become sexually aroused or gratified.
¶3 The only trial witness was a police detective, who testified that after police received a report of sexual abuse of a child, the detective interviewed the child. The interview lasted approximately one hour and was video recorded.
¶4 The recording was played for the jury.[2] The jury also viewed a drawing that the detective used during the interview, on which the child indicated that Miller had touched him on his penis.
¶5 Separately, the detective read to the jury from what the jury was told was "the factual basis" of a "document" from "La Crosse County Court case number 90-CF-1206." Details regarding this disclosure are addressed below in the Discussion section in connection with what we will call the 1990 other-acts evidence, which was admitted pursuant to WIS. STAT. § 904.04(2)(b)1. The court allowed admission of the 1990 other-acts evidence to allow the jury to assess Miller's intent, the absence of mistake, his motive, and the alleged use of a common plan or modus operandi in committing the charged offense. Miller challenges the admission of the 1990 other-acts evidence in this appeal.
¶6 In addition, the detective informed the jury that Miller had been convicted in La Crosse County of intentionally having sexual contact with a person under the age of 12, a crime that occurred in August 1983. The 1983 conduct resulted in a 1984 conviction, although the jury was not informed of that fact. Further details regarding this disclosure to the jury are addressed in the Discussion section below, in connection with what we will call the 1984 conviction and its admission under WIS. STAT. § 904.04(2)(b)2. This statute allows the admission of evidence of a defendant's character, as demonstrated through a prior sexual assault of a child, to show that the defendant acted in conformity with that character in allegedly later sexually assaulting a child. Thus, unlike the general rule in § 904.04(2)(a), which "prohibits the admission of evidence of a defendant's other bad acts to show that the defendant has a propensity to commit crimes," State v. Marinez , 2011 WI 12, ¶18, 331 Wis. 2d 568, 797 N.W.2d 399, under § 904.04(2)(b)2. the State may offer a conviction to show propensity. In this appeal Miller does not challenge the admission of this propensity evidence in the form of the 1984 conviction.
¶7 The detective further testified that he interviewed Miller in September 2014, the month after the alleged sexual assault, and that Miller made statements that included the following. Miller had "hung out with" the victim, riding bikes and watching TV. While the two of them were in Miller's apartment, Miller had "tickled" the victim. Miller initially said that, while tickling the victim, Miller "may have accidentally touched ... [the victim's] private area." However, "a little bit later when [the detective] asked again [Miller] said that he didn't remember." Miller described himself as having "tickled" the victim in the same location in his apartment where the victim reported, in his interview with the detective, that Miller and the victim had been when Miller allegedly touched the victim's penis.
¶8 The detective further testified that Miller admitted that he had previously "touch[ed] boys inappropriately," including touching boys in the same manner that the victim in this case reported that Miller had touched him.
¶9 Miller was convicted of first degree child sexual assault on a jury verdict of guilty. With the assistance of new, post-conviction counsel, Miller filed a motion that raised the same issues he now raises on appeal. After holding a Machner hearing, at which trial counsel testified, the court denied the motion.[3] Miller appeals.
DISCUSSION
I. Prosecution's "Cognitive Delays" References
¶10 Miller argues that his trial counsel provided ineffective assistance in failing to object to the prosecutor making "unsupported claims" to the jury, at various points during trial, that the victim, in the words of Miller's argument, "suffered from cognitive disabilities."[4] We now quote a summary of our standard of review and other pertinent legal standards, provide additional background on this issue, and explain why we reject the ineffective assistance claim. We conclude that the State did not make unsupported claims, and therefore failure of trial counsel to object to the prosecution comments was not deficient performance.
¶11 Our supreme court has summarized the ineffective assistance of counsel standards as follows:
Whether a defendant was denied effective assistance of counsel is a mixed question of law and fact. The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous; whether counsel's conduct constitutes ineffective assistance is a question of law, which we review de novo. To demonstrate that counsel's assistance was ineffective, the defendant must establish that counsel's performance was deficient and that the deficient performance was prejudicial. If the defendant fails to satisfy either prong, we need not consider the other.
Whether trial counsel performed deficiently is a question of law we review de novo. To establish that counsel's performance was deficient, the defendant must show that it fell below "an objective standard of reasonableness." In general, there is a strong presumption that trial counsel's conduct "falls within the wide range of reasonable professional assistance." Additionally, "[c]ounsel's decisions in choosing a trial strategy are to be given great deference."
Whether any deficient performance was prejudicial is also a question of law we review de novo. To establish that deficient performance was prejudicial, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."
State v. Breitzman , 2017 WI 100, ¶¶37-39, 378 Wis. 2d 431, 904 N.W.2d 93 (citations omitted).
¶12 During jury selection, without contemporaneous defense objection, the prosecutor asked panelists whether any of them had "worked with children who have cognitive delays." Seeing raised hands, the prosecutor engaged with some panelists on what they thought were challenges in communicating with persons who have cognitive delays. In the course of this discussion, one panelist volunteered that she had a 17-year-old daughter with "special needs."
¶13 The prosecutor changed topics. However, the mother of the daughter with special needs returned to the cognitive delays topic. She asked whether the victim in this case has special needs. The prosecutor responded that she did not "have a diagnosis [of the victim] for you. I'm not a medical professional." The prosecutor further explained, however, that jurors would be "able to ... see the child [in the video recording] and determine if there's any kind of cognitive delay." The panelist responded that, if the victim in this case has special needs, the panelist could not serve as a juror, because the panelist's "biggest fear" for her daughter is that she might be sexually assaulted. The prosecutor asked if the panelist "could still sit on the jury panel and remain impartial," "knowing that" the victim in this case "is an 11-year-old boy who's, you know, [in a] totally ... different scenario." The panelist responded, "If he's special needs, no." After further discussion along the same lines, the court excused this panelist and replaced her with another.
¶14 After jury selection, out of the presence of the jury, defense counsel told the court that he had been taken "a little bit off guard by the voir dire on [the topic of a child] with cognitive delays and special needs," because the defense did not anticipate evidence offered to prove that the victim had cognitive delays or special needs. However, defense counsel dropped the matter after the court and the parties appeared to agree, in the course of discussion, that the questioning had merely anticipated evidence and argument about how the detective found it difficult to engage with the victim and how the victim's allegedly reduced cognitive ability is exhibited in the recording.
¶15 During opening statement, the prosecutor predicted that the jury would notice, in viewing the recording, that the victim "has some cognitive delays and a little bit of difficulty in communicating and so [the detective] used her training and experience in speaking with" the victim. Defense counsel did not object to this statement.
¶16 During closing, without defense objection, the prosecutor argued that the victim had come forward and told the truth,
even though he's only 11 years old and even though he's got some cognitive delays and even though he was breaking this supposed friendship he had with [Miller] ....
These cases don't happen in front of witnesses. They don't happen in a way where fingerprints or DNA will help. They don't happen where an 11 year old who functions on a simple level can give you a story the way an adult would.... We have to seek the truth for [the victim] and for children like him.
(Emphasis added.)
¶17 In closing, defense counsel argued that the prosecutor was "deeply disingenuous" in referring to cognitive delay, because the prosecutor was "the only one that ever said this boy had cognitive delays. She paints a story that you've only heard from her."
¶18 Miller argues that the prosecutor's statements and arguments were improper because they were unsupported by evidence available to the jury. We disagree. None of the prosecutor's statements or arguments, considered either in isolation or collectively, were improper, and therefore objections to those statements or arguments would have been without merit. It is not deficient performance to fail to raise a meritless objection. State v. Wheat , 2002 WI App 153, ¶23, 256 Wis. 2d 270, 647 N.W.2d 441. It is not the case, as Miller contends, that the prosecutor argued that the State had or would present evidence of cognitive delay beyond what the jurors might glean simply by viewing the hour-long recording. The prosecutor at least implicitly disavowed a medical diagnosis by anyone, explaining to the jury that she did not "have a diagnosis" and was "not a medical professional." The prosecutor further suggested that this case does not involve a scenario involving a person with "special needs"; in common parlance, "special needs" would seem to indicate a person with a diagnosed condition. As trial counsel appeared to recognize in dropping his initial concerns on this topic, it is self-evident that, depending on the circumstances, cognitive delay can be assessed by jurors based solely on their observations of a person being interviewed for an hour. Further, in his closing, defense counsel effectively conveyed his position that there was no basis for the jury to find that the victim had cognitive delay other than by viewing the recording.
¶19 In sum, the prosecution did not purport to rely on medical or psychological evidence or knowledge, but instead relied on the recording to argue that the victim was a credible witness who functioned at a relatively "simple" cognitive level. For these reasons, we conclude that Miller has not shown that trial counsel's performance fell below an objective standard of reasonableness.
II. 1990 Other-Acts Evidence
¶20 As summarized above, the State successfully pursued motions to admit two categories of evidence that involved allegations of prior child sexual assaults committed by Miller: (1) other-acts evidence regarding 1990 conduct involving sexual assaults of two boys that resulted in a prior conviction, offered pursuant to WIS. STAT. § 904.04(2)(b)1. ; and (2) character evidence regarding a separate case, Miller's 1984 conviction for sexually assaulting a boy, offered pursuant to § 904.04(2)(b)2. The court granted both motions, and each category of evidence was admitted at trial. We address pertinent details regarding this evidence below.
¶21 Miller challenges only the court's ruling admitting the 1990 other-acts evidence and does not challenge admission of propensity evidence in the form of the 1984 conviction. We assume without deciding that the court erroneously exercised its discretion in admitting the 1990 other-acts evidence, and conclude that the assumed error was harmless, given the strong, admissible evidence presented to the jury, notably including the 1984 conviction as propensity evidence. Because the likely effect on the jury of the admission of the 1984 conviction evidence as propensity evidence plays a role in our conclusion of harmlessness, we discuss both the 1990 other-acts evidence and the 1984 conviction evidence.
¶22 We now summarize the circuit court's rulings, then describe the pertinent legal standards, the particular evidence presented to the jury, and pertinent jury instructions. Then we explain why we conclude that the assumed error was harmless. Because we assume that the 1990 other-acts evidence was improperly admitted under WIS. STAT. § 904.04(2)(b)1., and because Miller does not challenge the admission of the 1984 conviction evidence under § 904.04(2)(b)2., we need not interpret either statute or address the arguments of the parties about whether the court erroneously exercised its discretion in admitting other-acts evidence.
¶23 We construe the circuit court to have made the following rulings. The court partially ruled in the State's favor on its 1990 other-acts motion, determining that at least some facts were admissible as other acts under WIS. STAT. § 904.04(2)(b)1., but deferring a ruling on what specific other-acts evidence could be admitted, which could depend on how the State's "full strategy" emerged at trial. Separately, the court granted the State's motion to allow the State to offer the 1984 conviction as propensity evidence under § 904.04(2)(b)2.
¶24 The 1990 other-acts evidence and the 1984 conviction evidence issues were revisited after jury selection, outside the jury's presence. The State proposed that the following be offered as other-acts evidence: a witness would read to the jury the factual allegations of 1990 conduct contained in the criminal complaint, without revealing that Miller was convicted of a crime in that case or that he admitted another crime that was dismissed and read in for sentencing purposes.[5] The court agreed to this proposal, implicitly rejecting a defense objection that the contents of the complaint were hearsay.
¶25 Regarding the character evidence, the State proposed that a witness read to the jury only the offense of conviction in the 1984 case, without revealing any facts about Miller's underlying conduct in that case. Miller's counsel objected only to use of the words "feloniously" and "felony" in this presentation, which the State agreed to omit.
¶26 While we do not address the admissibility of the other-acts evidence, we now describe pertinent legal standards to place the parties' arguments in proper context. The general rule is that evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." WIS. STAT. § 904.04(2)(a) ; State v. Sullivan , 216 Wis. 2d 768, 782-83, 576 N.W.2d 30 (1998). The circuit court determined that the 1990 other-acts evidence and the 1984 conviction evidence should be admitted under exceptions to this general rule also contained in § 904.04(2).
¶27 To repeat, the court admitted the 1990 other-acts evidence pursuant to WIS. STAT. § 904.04(2)(b)1. This exception permits evidence of prior bad acts that are offered for a permissible purpose, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Sec. 904.04(2)(a). More specifically, this provision gives the State "greater latitude" to offer such evidence when, as here, the State charges a violation of ch. 948, alleging a violation of WIS. STAT. § 948.02(1), and the other-acts evidence is "similar" to the charged conduct. Sec. 904.04(2)(b)1. ; State v. Dorsey , 2018 WI 10, ¶¶28-35, 379 Wis. 2d 386, 906 N.W.2d 158 (interpreting § 904.04(2)(b)1. to hold that "circuit courts should admit evidence of other acts with greater latitude under the ... analysis [set forth in Sullivan ] to facilitate its use for a permissible purpose").
¶28 With that background, we now describe the substance of the 1990 other-acts evidence that the jury heard. To repeat, jurors were told that "the factual basis" came from a "document" in "La Crosse County Court case number 90-CF-1206."[6] A La Crosse police officer investigated a "possible sexual assault of a child" in September 1990, by interviewing: Child 1, a boy aged 10; Child 2, a boy aged 13; and a person who had hired Miller to babysit on the day in question. Child 1 told the officer that Miller had been baby-sitting the boys when Miller "felt [Child 1's] private parts" and "sucked on his penis" three times. Child 1 said that he "tried to leave the house at one point; but the defendant laid on top of him and would not let him leave." Child 1 also said that Miller told him not to tell anyone about this.
¶29 The detective further related that the "document" in the 1990 case reflected that Child 2 told the officer that he witnessed Miller "doing ... to" Child 1 the "things" related by Child 1. Child 2 also said that Miller "did the same thing to" Child 2, touching and "suck[ing] on his penis." Child 2 also said that when he tried to leave, Miller "grabbed his arm, stopp[ing] him from leaving." Both Child 1 and Child 2 said that Miller exposed his penis to the two boys but "did not ask the victims to do anything to him." The officer confirmed with a person identified in the complaint that she had hired Miller to babysit at this house that day.
¶30 Regarding the 1990 other-acts evidence, the defense did not request, and the court did not give, a cautionary jury instruction to "help to limit any unfair prejudice that might otherwise result." See State v. Hunt , 2003 WI 81, ¶72, 263 Wis. 2d 1, 666 N.W.2d 771. Such an instruction would have informed the jurors "that they should not conclude from the evidence that the defendant has a certain character or a certain character trait and that the defendant acted in conformity with that trait or character." See id. , ¶74.
¶31 Turning to the 1984 conviction evidence, the detective read as follows from a document identified to the jury as "a Judgment of Conviction":
[In the] County of La Crosse, court case number 83-CF-595, Sheldon K. Miller, at 3429 Mormon Coulee Road, intentionally had sexual contact with another, to wit: B.H., date of birth of 01-15-75, a person under the age of 12 years.
....
... [on] August 7th of 1983.[7 ]
¶32 Without objection from the defense, the jury instructions included the following regarding the 1984 conviction evidence, based on WIS JI- CRIMINAL 276:
Evidence has been received that Sheldon K. Miller has been convicted of first degree sexual assault of a child.
You may, but are not required to, conclude from that evidence that the defendant has a certain character. You may also conclude, but you are not required to, that the defendant acted in conformity with that character with respect to the offense charged.
You should give this evidence the weight you believe it is entitled to receive. Before you may find the defendant guilty of the offense charged in this case, the State must satisfy you beyond a reasonable doubt [that] the defendant is guilty, based on all the evidence.
¶33 The prosecutor in closing addressed the 1990 other-acts evidence and the 1984 conviction evidence as follows:
This was a boy who was a little slow who trusted this adult without any reason for doubt, and you heard about the defendant's past.
You heard that he has been convicted for sexually assaulting a child under the age of 12 before in 1984, and then you heard from reports of a ten year old and a 14-year-old boy from 1990 who reported the defendant had touched them, fondled them, sucked on their penises, and exposed himself. The State is not introducing the defendant's prior history to distract you from the evidence in this case. It's just the opposite. It's to put the evidence that [the victim] gave you today into proper context. The defense may argue that, because this offense merely involved touching of [the victim], that there's no evidence of sexual gratification; but the evidence of the defendant's character and prior events is to show you beyond a reasonable doubt that the defendant is sexually gratified by touching young boys.
In the opening statement defense counsel said, ["I]f there was touching, it wasn't sexual in nature["]; but use your common sense. Why would this man touch and squeeze the penis of an 11-year-old boy if it were not sexually motivated? In this case there is no other reasonable explanation for the defendant's conduct other than sexual gratification, but without the prior evidence you may have wondered why he did that. Well, now you know. It is my job to prove an element beyond a reasonable doubt, and with these two prior incidents mentioned you now have evidence beyond a reasonable doubt about what the defendant's reason was for assaulting [the victim] which was to satisfy his attraction to a young boy.
¶34 As noted, we assume without deciding that the court erroneously exercised its discretion in admitting the 1990 other-acts evidence, and conclude that the assumed error was harmless because it is clear beyond a reasonable doubt that a rational jury would have reached the same result if it had not heard the 1990 other-acts evidence.
¶35 Error in admitting other-acts evidence may be harmless and therefore not a basis for reversal. Hunt , 263 Wis. 2d 1, ¶¶76, 79-80. Error is harmless if it is " 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.' " State v. Harvey , 2002 WI 93, ¶46, 254 Wis. 2d 442, 647 N.W.2d 189 (quoting Neder v. United States , 527 U.S. 1, 18 (1999) ). We decide harmless error issues de novo. State v. Magett , 2014 WI 67, ¶29, 355 Wis. 2d 617, 850 N.W.2d 42.
¶36 The primary focus of the evidence presented during a short trial was the victim's detailed account of the assault, which closely aligns with key admissions by Miller that the detective testified to. This includes Miller's statement that he may have "accidentally" touched the victim's penis while "tickling" the victim in the same location that the victim gave for the alleged assault, as well as his admission that he had done to others what the victim here says he did to the victim here.
¶37 The defense rested without calling a witness. The defense arguments were not strong. Its theory was that the State had not met its burden because it failed to present evidence to corroborate the victim's statements, and not that the victim had any motive to lie. Defense counsel suggested in passing in closing argument that perhaps the victim was "confused" about whether Miller touched his penis because the victim had heard in the neighborhood that Miller was a registered sex offender.
¶38 Notably, Miller does not challenge admission of the 1984 conviction evidence, which permitted the jury to find that Miller had the character to molest boys. Thus, even without the 1990 other-acts evidence, the jury had a strong basis in the 1984 conviction evidence to discount Miller's report to the detective of an accidental touching. The prosecution could have given essentially the same argument quoted above, just leaving off reference to the 1990 other-acts evidence, and it still would have been powerful.
¶39 Finally on this issue, Miller fails to address the State's harmless error argument in his reply brief, conceding it. See United Coop. v. Frontier FS Coop. , 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578.[8]
III. Court's Burden Of Proof References
¶40 Miller argues that the circuit court violated his rights to due process and a fair trial through its communications to the jury regarding the State's burden of proof. We reject this argument because there is no reasonable likelihood that the jury convicted Miller based on a lesser standard of proof. The court read to the jury the standard burden of proof jury instruction immediately before deliberations, and the jury was provided with a copy of the instruction, eliminating any possible confusion created by the initial remarks by the court.
¶41 The Due Process Clause protects a defendant against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the charged crime. In Re Winship , 397 U.S. 358, 364 (1970). The State has the burden of proving all elements beyond a reasonable doubt. Muller v. State , 94 Wis. 2d 450, 473, 289 N.W.2d 570 (1980). We review jury instructions as a whole to determine whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the Winship standard. State v. Patterson , 2009 WI App 161, ¶31, 321 Wis. 2d 752, 776 N.W.2d 602.
¶42 We now provide additional background on this issue. After covering some preliminary issues in jury selection, the circuit court announced that it wanted to ensure that all panelists, if sworn in as jurors, would be willing to hold the State to its burden of proving the charged crime beyond a reasonable doubt and also to apply the presumption of innocence. In asking these questions, the court said in pertinent part, without objection by the defense:
We have some foundations upon which our system of justice is built, and ... we have two foundations that I'd like to ask you about. One of those is the State having the sole burden of proof beyond a reasonable doubt to prove each element of the offense that ... the State charges. Now, that is not beyond all doubt; and we are not like a television show, CSI. Okay? So it is about reasonable doubt. Is there any member of the panel that just looks at that and says, sorry, Judge; I can't do that; they're gonna have to prove it to me completely?
(No response [from any panelist].)
¶43 After the presentation of evidence, the court read instructions to the jury that the parties had agreed upon. However, in the midst of defense counsel's closing argument, counsel and the court realized that the court had not read to the jury the standard burden of proof instruction, WIS JI- CRIMINAL 140, due to what the court described as a "mix-up with the new CCAP jury instruction program." After the prosecution gave its rebuttal argument, the court read to the jury the standard instruction and explained that a copy of the instructions would be provided for the jury to refer to in its deliberations.[9]
¶44 Miller contends that the court's suggestion to the jury during jury selection "that the jury should not hold the state to too high a burden," together with presenting the correct burden of proof instruction "in a delayed manner," impermissibly diluted the State's burden in the eyes of the jury. Miller emphasizes that jurors apparently had copies to follow along as the court read the other instructions, but apparently did not have copies to follow along when the court read the burden of proof instruction, which Miller contends rendered this instruction an after thought.
¶45 Considered in isolation, we might conclude that the circuit court's statement at the time of jury selection carried an unacceptable risk of confusing the jurors regarding the burden of proof by indicating that the State did not have to prove its case "completely." However, even assuming that the court's truncated statement may have initially confused some jurors, we conclude that, reviewing the instructions as a whole, there is not a reasonable likelihood that the jury understood the instructions to allow conviction based on proof that would not be sufficient to meet the Winship standard. As the State points out, the court effectively ended up emphasizing the correct standard by giving it special attention and making it the last instruction. Further, the correct instruction was also provided in written form to the jury for it to consult during deliberations.
IV. Cumulative Effect Ineffective Assistance Of Counsel Argument
¶46 Miller briefly asserts that, even if his other arguments are in themselves unavailing, we should reverse on the grounds that his trial counsel provided ineffective assistance based on the cumulative prejudicial effects of trial counsel's allegedly deficient performance in failing to object to the prosecution's cognitive delays references, not requesting a limiting instruction regarding the 1990 other-acts evidence, not objecting to the prosecutor's opening argument references to the 1990 other-acts evidence as relating to character, and not objecting to the delayed presentation of the jury instruction on the State's burden of proof. However, Miller fails to make any developed argument showing deficient performance and prejudice that does not rest on at least one premise that we have rejected in our discussion above.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

The State did not call the alleged child victim to testify in person, and instead relied entirely on the recording. Miller elected not to exercise his right to cross examine the victim. See Wis. Stat. § 908.08(5)(a) (permitting cross examination of child victim if recording of interview is played and child is not called on direct examination).

See State v. Machner , 101 Wis. 2d 79, 303 N.W.2d 633 (1981) (at an evidentiary hearing, circuit court may take evidence and weigh credibility of witnesses to assess allegations of deficient, prejudicial performance by counsel).

Miller frames his challenge to the prosecution's references to "cognitive delay" both as a claim of direct error and also as a claim of ineffective assistance of trial counsel. However, as the State correctly notes, Miller fails to take into account that, because there was no objection at trial, he cannot obtain relief unless the error was "obvious and substantial[,]" and "so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time." See State v. Jorgensen , 2008 WI 60, ¶21, 310 Wis. 2d 138, 754 N.W.2d 77 (citation and internal quotation marks omitted). Miller concedes this point by failing to address it in his reply brief. See United Coop. v. Frontier FS Coop. , 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (failure to refute proposition asserted in a response brief may be taken as a concession). Therefore, we address this issue as an ineffective assistance of counsel claim. In does not matter, though, because the basis for our decision on this issue, as explained in the text below, defeats any argument of error, much less error that could have been obvious, substantial, and fundamental.

Although the criminal complaint in the case involving the 1990 conduct alleged that Miller touched and had oral contact with the penises of two boys, Miller entered a plea of guilty to sexually assaulting the 13-year-old, while the charge that he sexually assaulted the 10-year-old was dismissed and read-in for sentencing purposes.

Although the jury was not explicitly told all of the following, these facts constituted the factual basis section of the complaint in a case resulting in Miller's conviction based on the 1990 conduct for a violation of Wis. Stat. § 948.02(2) (1987-88) (second degree sexual assault of a child is "sexual contact or sexual intercourse with a person who has not attained the age of 16 years."). In particular, the jury was not told that these allegations resulted in a conviction.

Although the jury did not learn this specific fact, the conviction in the 1984 case was for a violation of Wis. Stat. § 940.225(1)(d) (1981-82) (one category of first degree sexual assault is "sexual contact or sexual intercourse with a person 12 years of age or younger").

Miller asserts in passing, without developing an argument, that the prosecutor "encouraged the jury to use other-acts evidence for improper purposes" in her opening statement, but in the passage of transcript that Miller cites, the prosecutor merely recited in a neutral manner the 1990 other-acts evidence and the 1984 conviction evidence.

Miller does not argue that the instruction as read by the court incorrectly stated the burden of proof. The jury was instructed as follows:
Defendants are not required to prove their innocence. The law presumes every person charged with the commission of an offense to be innocent. This presumption requires a finding of not guilty unless in your deliberations, you find it is overcome by evidence which satisfies you beyond a reasonable doubt that the defendant is guilty.
The burden of establishing every fact necessary to constitute guilt is upon the State. Before you can return a verdict of guilty, the evidence must satisfy you beyond a reasonable doubt that the defendant is guilty.
If you can reconcile the evidence upon any reasonable hypothesis consistent with the defendant's innocence, you should do so and return a verdict of not guilty.
The term "reasonable doubt" means a doubt based upon reason and common sense. It is a doubt for which a reason can be given, arising from a fair and rational consideration of the evidence or lack of evidence. It means such a doubt as would cause a person of ordinary prudence to pause or hesitate when called upon to act in the most important affairs of life.
A reasonable doubt is not a doubt which is based on mere guesswork or speculation. A doubt which arises merely from sympathy or from fear to return a verdict of guilt is not a reasonable doubt. A reasonable doubt is not a doubt such as may be used to escape the responsibility of a decision.
While it is your duty to give the defendant the benefit of every reasonable doubt, you are not to search for doubt. You are to search for the truth.
See Wis JI- Criminal 140.