COURT OF APPEALS
DECISION
DATED AND FILED

February 6, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP19-CR**

Cir. Ct. No. **2016CF991**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

 V.

MICHAEL WILLIAMS,

  DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Milwaukee County: JEFFREY A. WAGNER, Judge. *Affirmed.*

Before Fitzpatrick, P.J., Blanchard and Kloppenburg, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Michael Williams appeals a judgment of conviction for first-degree reckless homicide as a party to a crime, by use of a

dangerous weapon, and felon in possession of a firearm, following a jury trial. Williams contends that the circuit court erred by allowing a witness to testify that she had seen Williams "once or twice" in the past with Williams's alleged co-actor in the homicide. Williams also contends that the prosecutor made improper remarks during closing arguments that shifted the burden of proof to Williams to prove his innocence. Finally, Williams contends that the standard jury instruction directing the jury to "search for the truth" lowered the State's burden of proof below the reasonable doubt standard. For the reasons set forth in this opinion, we reject these contentions. We affirm.

¶2 In September 2016, Williams was charged with first-degree intentional homicide as a party to a crime, by use of a dangerous weapon, and felon in possession of a firearm. The charges stemmed from the July 2015 shooting death of Frederick Martin at a gas station on Center Street in Milwaukee. The State's theory was that Williams shot Martin and fled the gas station with Tony Madison, and that Williams and Madison were shortly thereafter the victims of a second shooting that was in retaliation for the Martin shooting.

¶3 Prior to trial, Williams objected to the State eliciting testimony from witness Tiffany McAffee that McAffee had seen Williams with Madison on one or two occasions prior to the shooting. Williams argued that the relevance of the testimony was substantially outweighed by the danger of unfair prejudice because McAffee did not see Williams at all on the day of the shooting. He also argued that the testimony "would be totally irrelevant." The court determined that Williams's argument went to the weight of the evidence and allowed the testimony.

2

¶4     Also prior to trial, Williams requested a modified jury instruction on the State's burden to prove the elements of the charged offenses beyond a reasonable doubt.  Williams requested that the court omit language from the standard jury instruction that directs the jury:  "While it is your duty to give the defendant the benefit of every reasonable doubt, you are not [to] search for doubt. You are to search for the truth."  Instead, Williams argued for the court to instruct the jury only:  "It is your duty to give the defendant the benefit of every reasonable doubt."  The court denied Williams's request to modify the instruction.

¶5     The State introduced the following evidence at trial to support its theory of Williams's involvement in Martin's shooting.  Miguel Henderson testified that he met Martin at a gas station on Center Street shortly before the shooting on July 24, 2015.  Henderson was sitting in the front passenger seat of Martin's car while Martin sat in the driver's seat when a man entered the backseat and shot Martin.  Gas station surveillance camera footage showed that a man in camouflage pants had entered the backseat of Martin's car right before Martin was shot and that, immediately after the shooting, the man fled the scene in a red truck driven by a man wearing a white, blue, and red sweatshirt.

¶6     A silver car that had arrived at the gas station before the shooting followed the red truck as it fled the gas station after the shooting.  About fifteen minutes later, a second shooting was reported about five miles away on 54th Street.  Surveillance video camera footage in the immediate area of the second shooting showed a silver car, similar to the one from the gas station, on the scene. A witness testified that he encountered a man in camouflage pants in that area who had been shot.  Police located a red truck with smeared blood on the driver's side, and a maroon minivan with bullet holes that were identified as exit strikes, at a residence near the site of the second shooting.  Madison was found by emergency

responders several blocks away, suffering from a gunshot wound and wearing a white, blue, and red sweatshirt that matched the one worn by the driver of the red truck in the gas station video footage, and was transported to the hospital. Williams also arrived at the hospital on the evening of July 24, 2015, about an hour after the 54th Street shooting, suffering from gunshot wounds and wearing camouflage pants.

¶7     McAffee testified that a shooting occurred outside her home on 54th Street on July 24, 2015. She testified that she was acquainted with Madison, and that Madison had been at her house that day and had left about an hour before the shooting occurred. The driveway where the red truck and maroon minivan were located after the shooting was the driveway for McAffee's house, and McAffee identified the maroon minivan as belonging to Madison. Over Williams's objection, the State showed McAffee a photograph of Williams, and McAffee stated that she did not know him but had seen him with Madison "once or twice" in the past.

¶8     In closing arguments, Williams argued that the State had not met its burden of proof to establish that Williams had killed Martin. He argued that "the truth is that we simply don't know what happened" and that "[w]e don't have concrete evidence that tells us what happened to Fred Martin on that day." In rebuttal, the State argued that "[t]he thrust of [defense counsel's] remarks, that's a -- kind of a moldy, old ratty defense that we sometimes see when the defense has no good facts." Williams objected and, at sidebar, requested a mistrial on grounds that the State had shifted the burden of proof to the defense. The court denied the request for a mistrial.

¶9     After the sidebar, the State continued its rebuttal, arguing that the defendant's argument had "no answer" for the facts tying Madison to both shooting scenes, "no answer" for McAffee's testimony that she had seen Williams with Madison, and "no answer" for the fact that Williams had arrived at the hospital with a gunshot wound and wearing camouflage pants.  In the closing jury instructions, the court gave the following instructions that it intended as curative related to Williams's objection to the State's closing arguments:  "Consider carefully the arguments of the attorneys, but … their arguments and opinions are not evidence"; and "[t]he burden of proof is entirely on the State of Wisconsin. And the defense can just -- do nothing.  The elements have to be proved by the [S]tate beyond a reasonable doubt."  The court gave the standard jury instruction on the State's burden of proof, including the following:  "While it is your duty to give the defendant the benefit of every reasonable doubt, you are not [t]o search for doubt.  You are to search for the truth."  The jury found Williams guilty of the lesser included offense of first-degree reckless homicide as a party to a crime, by use of a dangerous weapon, and felon in possession of a firearm.  Williams appeals.

¶10    Williams contends that the circuit court erred by allowing McAffee to testify that she had seen Williams with Madison once or twice in the past but without specifying dates or locations.  He contends that the evidence should have been excluded under WIS. STAT. § 904.03 (2017-18)[1] because its probative value was substantially outweighed by the resulting prejudice.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶11   Evidence must be relevant to be admissible at trial.  WIS. STAT. § 904.02.  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  WIS. STAT. § 904.01.  Even if evidence is relevant, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  WIS. STAT. § 904.03.

¶12   "We review a circuit court's decision to admit or exclude evidence under an erroneous exercise of discretion standard."  *Martindale v. Ripp*, 2001 WI 113, ¶28, 246 Wis. 2d 67, 629 N.W.2d 698.  We "will uphold a decision to admit or exclude evidence if the circuit court examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion."  *Id.*

¶13   Williams contends that the probative value of McAffee's testimony that she previously had seen Williams with Madison "once or twice" was extremely low.  He contends that the evidence had little weight because McAffee did not explain when or where she had seen Williams with Madison.  He points out that McAffee did not testify that she had seen Williams on the day of the shootings, gave no opinion as to the closeness of their relationship, and testified that she did not even know Williams's name prior to the police investigation in this case.  Williams contends that, in contrast, the prejudicial nature of the evidence was extremely high, arguing that McAffee's testimony connecting Williams to Madison was key to the State's case.  Williams argues that the State had good evidence that Madison had been at the scene of both shootings, but very little to connect Williams with the shootings.  Williams contends that the State

therefore needed McAffee's testimony connecting Williams to Madison to convince the jury to link Williams to the shootings, and that the State did so by arguing repeatedly that McAffee's testimony established that Williams and Madison were "associates."

¶14     Williams also contends that the circuit court failed to properly exercise its discretion when it admitted McAffee's testimony because the court did not explain how it weighed the probative value against the danger of unfair prejudice.   He contends that the circuit court admitted the evidence on its assessment that the evidence would not carry much weight with the jury, rather than weighing the evidence's probative value against its potential prejudice.

¶15     In response, the State argues that the evidence was probative of the connection between Williams and Madison, and that it was therefore relevant. The State then contends that Williams's prejudice argument fails because Williams argues only that the evidence prejudiced Williams by supporting the State's theory that Williams and Madison were involved in the homicide together. That is, the State contends, Williams fails to make any argument that the evidence was *unfairly* prejudicial as required under WIS. STAT. § 904.03.   It argues that Williams's argument that the court failed to properly exercise its discretion fails because the court indicated that the issue had been discussed in chambers.   It also argues that the court's on-the-record explanation that Williams's argument went to the weight of the evidence did not indicate an erroneous exercise of discretion.

¶16     In reply, Williams makes an argument that McAffee's testimony was *unfairly* prejudicial.   He contends that it had "a tendency to influence the outcome by improper means," *see State v. Sullivan*, 216 Wis. 2d 768, 789-90, 576 N.W.2d 30 (1998), by inviting the jury to reach a decision about Williams's connection to

7

Madison based on mere speculation. *See **Cudd v. Crownhart***, 122 Wis. 2d 656, 662, 364 N.W.2d 158 (Ct. App. 1985). He contends that the circuit court's limited remarks in admitting the evidence were not a sufficient exercise of discretion, and that the court's off-the-record statements in chambers cannot establish that the court properly exercised its discretion.

¶17   We are not persuaded that admission of McAffee's testimony was an erroneous exercise of discretion. While we agree with Williams that McAffee's testimony that she had seen Williams with Madison "once or twice" had low probative value,[2] we do not agree that the evidence was unfairly prejudicial. We reject Williams's initial argument that the evidence should have been excluded because it was highly prejudicial to Williams. As the State points out, that is not the test. Rather, the test is whether the evidence was *unfairly* prejudicial. As to unfair prejudice, we reject Williams's contention that the evidence tended to influence the outcome by improper means. McAffee's testimony that she had seen Williams with Madison once or twice did not invite the jury to reach a verdict based on speculation. Rather, it was an allegation of fact for the jury to consider along with all of the other trial evidence in deciding whether Williams was involved in Martin's shooting, and the State encouraged the jury to draw a reasonable inference from the evidence when it described Williams and Madison as "associates." We are not persuaded to reach a different conclusion based on the circuit court's lack of a detailed explanation of its exercise of discretion in admitting the evidence. ***State v. Pico***, 2018 WI 66, ¶15, 382 Wis. 2d 273, 914

---

[2] Williams does not argue on appeal that the evidence was not relevant.

N.W.2d 95 (stating that the reviewing court may search the record for reasons to sustain a circuit court's discretionary decision).

¶18   Next, Williams contends that the State made improper remarks during closing arguments that shifted the burden of proof to Williams to prove his innocence.  He contends that the State's closing arguments, as a whole, denied him a fair trial and violated his right to due process.[3]

¶19   "[A] motion for a mistrial based on prosecutorial misconduct is reviewed under an erroneous exercise of discretion standard." *State v. Patterson*, 2010 WI 130, ¶56, 329 Wis. 2d 599, 790 N.W.2d 909.  We will not reverse a circuit court's decision to deny a motion for a mistrial based on improper arguments by the State "unless there is evidence of an erroneous exercise of discretion and prejudice to the defendant." *See id.* (quoted source omitted).

¶20   First, Williams contends that the State made improper personal attacks on opposing counsel.  *See United States v. Young*, 470 U.S. 1, 9 & n.7 (1985) ("A personal attack by the prosecutor on defense counsel is improper …." (quoted source omitted)).  Williams cites the following remark by the State in closing arguments as personally disparaging defense counsel:  "The thrust of [defense counsel's] remarks, that's a -- kind of a moldy, old ratty defense that we sometimes see when the defense has no good facts."  Williams contends that this

---

[3]  The State argues that Williams forfeited any objection to the arguments the State made after Williams's objection and the court's ruling at sidebar by failing to make any further objection.  Williams replies that his objection in the middle of the State's comments covered the State's further objectionable comments after the sidebar.  Because we conclude that the State's comments do not establish reversible error in light of the court's curative instructions, we need not reach the issue whether Williams properly preserved his objections to each of the State's comments.

opined as to the merits of Williams's defense and the character of his defense counsel, thus shifting the burden of proof to Williams to prove his innocence. Second, Williams contends that the State also shifted the burden of proof to Williams by repeatedly stating that Williams had "no answer" for the facts that the State asserted established Williams's guilt. Williams argues that the State's comments left the jury with the impression that Williams had the burden of providing answers to the State's evidence to prove his innocence.

¶21    Williams contends that this case is akin to *State v. Smith*, 500 F.2d 293, 294-95 (6th Cir. 1974), which held that the State impermissibly shifted the burden of proof to the defense when it told the jury to "require" the defense to show a "reasonable explanation" for the State's evidence. Williams argues that here, as in *Smith*, the State's closing arguments confused the jury as to the burden of proof and impermissibly commented on Williams's exercise of his right not to testify. *See id.* at 296-97. He argues that the State's comments denied him his due process right to a fair trial by infecting the trial with unfairness. *See State v. Wolff*, 171 Wis. 2d 161, 167, 491 N.W.2d 498 (Ct. App. 1992).

¶22    The State does not dispute that the prosecutor made inappropriate remarks in closing arguments,[4] but argues that Williams was not prejudiced by them because the court gave the following curative instructions following the State's closing arguments: "Consider carefully the arguments of the attorneys, but … their arguments and opinions are not evidence"; and that "[t]he burden of proof

---

[4] The State takes the position that its "moldy, old ratty defense" comments were inappropriate. It does not state its position as to whether the "no answer" arguments were inappropriate. We caution the State that this court does not sanction closing arguments that imply that the defense has any obligation to present evidence.

is entirely on the State of Wisconsin. And the defense can just -- do nothing. The elements have to be proved by the [S]tate beyond a reasonable doubt." *See State v. Bembenek*, 111 Wis. 2d 617, 634, 331 N.W.2d 616 (1983) ("Where a [circuit] court gives the jury a curative instruction, the appellate court may conclude that such instruction erased any possible prejudice, unless the record supports the conclusion that the jury disregarded the [circuit] court's admonition."). The State contends that, here, there is no evidence that the jury disregarded the court's curative instructions.

¶23 The State argues that *State v. Mayo*, 2007 WI 78, 301 Wis. 2d 642, 734 N.W.2d 115, is instructive. In *Mayo*, the State made disparaging remarks about the role of defense counsel during closing arguments. *Id.*, ¶42. The court concluded, however, that the remarks did not prejudice Mayo when considered in the context of the entire trial because the role of defense counsel is common knowledge, and the jury was instructed that closing arguments are not evidence. *Id.*, ¶¶43-44. The State contends that here, as in *Mayo*, there is no likelihood that the State's remarks so infected the trial with unfairness as to deprive Williams of due process in light of the court's instructions to the jury.

¶24 Williams replies that the court's curative instructions were insufficient in light of the State's repetitive improper arguments. *See Hoppe v. State*, 74 Wis. 2d 107, 120, 246 N.W.2d 122 (1976) (stating that if improper arguments by the State were egregious and repetitive, curative instruction may be insufficient to dispel prejudice). Williams contends that the purported curative instructions were not, in fact, curative because they failed to specify which statements the jury should disregard and merely reworded the standard burden of proof instruction. He argues that *Mayo* is distinguishable because, in *Mayo*, the

11

improper comments were not as repetitive as compared to this case and did not shift the burden of proof to the defense.

¶25    We conclude that the State's improper remarks in closing arguments did not prejudice Williams. *See Patterson*, 329 Wis. 2d 599, ¶56. While the State's remarks may have criticized the defense for not presenting evidence, and may have indicated that the defense had an obligation to present evidence to counter the State's evidence of Williams's guilt, the court then issued curative instructions after closing arguments were completed that the attorneys' arguments were not evidence and that "[t]he burden of proof is entirely on the State of Wisconsin. And the defense can just -- do nothing. The elements have to be proved by the [S]tate beyond a reasonable doubt." Thus, the court instructed the jury that, contrary to any indication otherwise from the State's remarks, the defense had no burden to introduce any evidence at trial. We do not agree with Williams that the curative instructions were insufficient because they reworded the burden of proof instruction. The court issued the additional instructions to the jury as to the burden of proof to cure any potential that the State had prejudiced Williams with remarks criticizing the defense for allegedly failing to present evidence. Because there is no evidence that the jury disregarded the curative instructions, we conclude that those instructions erased any possible prejudice from the State's improper remarks.[5] *See Bembenek*, 111 Wis. 2d at 634.

¶26    Finally, Williams contends that the standard burden of proof jury instruction directing the jury to "search for the truth" violated his right to be

---

[5] Williams has not established that *State v. Smith*, 500 F.2d 293 (6th Cir. 1974), is controlling and compels a different result. We note that, here, the State did not tell the jury to "require" the defense to provide an explanation for the State's evidence.

convicted on evidence beyond a reasonable doubt. *See State v. Harvey*, 2002 WI 93, ¶19, 254 Wis. 2d 442, 647 N.W.2d 189 (1970). Williams recognizes that, in *State v. Avila*, 192 Wis. 2d 870, 535 N.W.2d 440 (1995), our supreme court rejected the same challenge to the standard burden of proof instruction and held that it was not reasonably likely that the instruction reduced the burden of proof below the reasonable doubt standard. Williams contends, however, that *Avila* was wrongly decided, and argues that social science research after *Avila* further demonstrates that *Avila*'s reasoning was incorrect.

¶27 We previously placed this appeal on hold because the Wisconsin Supreme Court granted a petition for review in *State v. Trammell*, No. 2017AP1206-CR, unpublished slip op. (WI App May 8, 2018) to address whether the holding in *Avila* was good law or if *Avila* should be overruled on the ground that it had been rebutted by empirical evidence. The supreme court has now issued a decision in *Trammell*, holding that the standard jury instruction "does not unconstitutionally reduce the State's burden of proof below the reasonable doubt standard." *State v. Trammell*, 2019 WI 59, ¶67, 387 Wis. 2d 156, 928 N.W.2d 564. Accordingly, we reject Williams's contentions that *Avila* was wrongly decided.

¶28 Williams also argues that, even if the standard burden of proof jury instruction is not facially unconstitutional, it was unconstitutional as applied to him because, in connection with the facts of this case, it lowered the State's burden of proof below the reasonable doubt standard. *See In re Winship*, 397 U.S. 358, 364 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."). He contends that the State's burden of proof was lowered below the reasonable doubt standard because, in

addition to the objectionable jury instruction for the jury to "search for the truth": (1) the State relied heavily on circumstantial evidence, including McAffee's testimony about Williams's connection to Madison; (2) the presenter emphasized to the jury that the prosecutor's opinion was that the "truth" was that Williams had killed Martin and that, if he had not, Williams was the "unluckiest son of a gun in the world"; and (3) the State faulted Williams for failing to answer questions as to his guilt that were raised by the evidence. We are not persuaded.

¶29     As explained above, our supreme court reaffirmed in *Trammell* that the standard jury instruction directing the jury to "search for the truth" does not lower the State's burden of proof below the reasonable doubt standard. *See Trammell*, 387 Wis. 2d 156, ¶67. Thus, the jury here was properly instructed on the State's burden of proof. We have also concluded that Williams was not prejudiced by the State's improper remarks in closing arguments because the court issued a curative instruction directing the jury that the defense had no obligation to present any evidence, and reiterating that the burden of proof was entirely the State's. We do not agree with Williams that the State's reliance on circumstantial evidence or its argument that the evidence established Williams's guilt effectively lowered its burden of proof. Accordingly, we reject Williams's contention that his due process right to be convicted on evidence that established his guilt beyond a reasonable doubt was violated in this case.

¶30     For the foregoing reasons, the judgment of the circuit court is affirmed.

> *By the Court.*—Judgment affirmed.

> This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

14